83 A.3d 94

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Francis Patrick LAGENELLA, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided Dec. 27, 2013.

Bradley Adam Winnick, Esq., Dauphin County Public Defender's Office, Damian Joseph DeStefano, Esq., Andrea Lynn Haynes, Esq., for Francis Patrick, Lagenella Jr.

Edward Michael Marsico Jr., Esq., Christopher Joseph Schmidt, Esq., Harrisburg, for Commonwealth of Pennsylvania.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

### *OPINION*

Justice TODD.

We granted review in this matter to determine whether the Superior Court erred in affirming the trial court's denial of Appellant's motion to suppress evidence seized by a police officer during a warrantless inventory search of Appellant's vehicle following a valid traffic stop. For the reasons set forth below, we are constrained to conclude there was no basis for the officer to conduct an inventory search of Appellant's vehicle, and, therefore, that the evidence discovered during the inventory search should have been suppressed. Accordingly, we reverse the Superior Court's order and remand the matter to the Superior Court for remand to the trial court for further proceedings.

On December 31, 2008, at approximately 1:42 a.m., Corporal Terry Wealand of the Harrisburg Bureau of Police ("Department") observed a black Ford Mustang enter the flow of traffic without using a turn signal. Corporal Wealand activated his emergency lights and initiated a traffic stop of the Mustang, which was traveling west-bound on a one-way street. The vehicle, driven by Appellant, came to rest with the passenger side tires approximately two feet from the curb, but the vehicle was not blocking traffic. Corporal Wealand approached the driver's-side door and requested Appellant's driver's license, registration, and insurance information. During the stop, Corporal Wealand noticed that Appellant's vehicle did not have the required emissions sticker, and he also learned Appellant's license was suspended. Thus, he issued Appellant two citations, one for driving with a suspended license, and one for operating a vehicle without a valid inspection, and asked Appellant to step out of his car in order to sign

for the citations. At that time, Corporal Wealand told Appellant that he was free to leave, but that the car would be towed because of Appellant's suspended license.[1] Appellant indicated that he had a friend with a tow truck whom he could call to take possession of his vehicle, but the officer informed Appellant of the Department's policy of impoundment and towing ("towing policy").[2] Corporal Wealand also advised Appellant that, pursuant to Department policy, he was required to conduct an inventory of the contents of the vehicle ("inventory policy"). Appellant asked to stay and observe the inventory search, and he was permitted to do so.

Corporal Wealand testified that, pursuant to the Department's standard inventory policy for securing and inventorying the contents of an impounded vehicle, officers utilize a computer-generated form, which is accessible from their police cars, to document the condition, and inventory the contents, of a vehicle prior to having it towed. N.T. Suppression Hearing, 9/22/09, at 9. Corporal Wealand further testified that each field on the computer form must be completed before the computer will allow the officer to proceed to the next field. *Id.* at 10. Corporal Wealand identified the computer-generated form that he completed in connection with his inventory search of Appellant's vehicle on December 31, 2008, and specifically identified the field where he was required to document that he checked the vehicle's trunk. *Id.*

Next, Corporal Wealand testified that it was below freezing at the time of the traffic stop, and that Appellant was not wearing a jacket. Therefore, when he began the inventory search and observed a jacket in the backseat of the car, he asked Appellant if he wanted the jacket. Appellant indicated that he did, and Corporal Wealand advised Appellant that he would first need to check it for weapons. Appellant consented, and when Corporal Wealand "squeezed" the jacket to make sure there were no weapons, he felt a hard object, which

1. According to the notes of testimony, Corporal Wealand did not cite the lack of a valid inspection as a basis for towing Appellant's vehicle.

2. The record before us does not contain a copy of the Department's towing policy.

Appellant indicated was an eyeglass case, in one of the pockets. Corporal Wealand testified that Appellant told him to "go ahead" and open the eyeglass case. *Id.* at 12. When Corporal Wealand opened the eyeglass case, he observed two bags containing marijuana seeds, several plastic bags with what he believed to be cocaine residue, and a box-cutter. At this point, Appellant was placed under arrest, handcuffed, and seated behind the vehicle. Corporal Wealand then resumed the inventory search, and, upon opening the trunk of the vehicle, discovered a Savage Stevens 20–gauge shotgun and a Sears and Roebuck .30–06 hunting rifle. Based on the earlier computer check of Appellant's license, Corporal Wealand knew Appellant was a convicted felon who could not possess weapons, and Appellant admitted the hunting rifle was stolen.

Appellant filed a pre-trial motion to suppress evidence of the drugs and weapons discovered during the inventory search, arguing, *inter alia,* that he did not consent to the opening of the eyeglass case and there was no basis for Corporal Wealand to open the case under the plain feel doctrine, and that Corporal Wealand lacked authority to tow his vehicle pursuant 75 Pa.C.S.A. § 6309.2 because the vehicle did not present an issue of public safety. The trial court denied the motion with respect to the weapons, but granted the motion with respect to the drugs found in the eyeglass case. Thereafter, Appellant was convicted at a bench trial of receiving stolen property and unlawful possession of a firearm, and sentenced to 3 to 10 years incarceration. Appellant appealed his judgment of sentence to the Superior Court, wherein he argued, *inter alia,* that police may not tow a vehicle simply because their agency has issued a written order authorizing them to do so, and that 75 Pa.C.S.A. § 6309.2 allows for the towing of a vehicle only if there is an issue of public safety, which he contends was lacking in the instant case.

On appeal, the Superior Court affirmed Appellant's judgment of sentence in a published split panel decision. *Commonwealth v. Lagenella,* 17 A.3d 1257 (Pa.Super.2011). Quoting at great length from its decision in *Commonwealth v.*

*Thompson,* 999 A.2d 616 (Pa.Super.2010), a majority of the court concluded that: (a) Corporal Wealand conducted a valid vehicle stop after observing Appellant fail to use his turn signal; and (b) after learning Appellant's license was suspended, Corporal Wealand "properly immobilized Appellant's vehicle and informed Appellant it would need to be towed." *Lagenella,* 17 A.3d at 1264. The majority further held that Corporal Wealand conducted a valid inventory search of Appellant's vehicle pursuant to the Department's written inventory policy, and that he was engaged in a lawful inventory search when he discovered the weapons in the trunk of Appellant's vehicle. The court did not expressly address the propriety of Corporal Wealand's decision to tow Appellant's vehicle.

Judge Shogan dissented, noting that an inventory search is designed to protect the owner's property, not uncover evidence. Although Judge Shogan opined that Corporal Wealand had "lawful custody" of Appellant's vehicle because Appellant could not operate the vehicle, she determined there was no need to conduct an inventory search of the vehicle because there was no reason to tow the vehicle, as it did not present a safety concern, was not blocking traffic, and possibly could have been retrieved by Appellant's friend. She further noted that nothing of value was visible in the vehicle; that, contrary to the majority's suggestion, the Commonwealth presented no evidence that the search took place pursuant to the Department's standard procedures; and that, even if the search began as an inventory search, it became investigatory once Corporal Wealand discovered the drug residue in the eyeglass case, at which time Corporal Wealand should have stopped the inventory search and obtained a search warrant.

 Appellant filed a petition for allowance of appeal with this Court, and we granted review to consider whether the Superior Court erred in affirming the trial court's denial of Appellant's suppression motion. In reviewing a ruling on a suppression motion, our standard of review is whether the factual findings and the legal conclusions drawn therefrom are supported by the evidence. *Commonwealth v. Wholaver,* 605

Pa. 325, 347, 989 A.2d 883, 896 (2010). Further, the reviewing court may consider only the Commonwealth's evidence and so much of the evidence for the defense as remains uncontradicted when read in the context of the of the entire record. *Commonwealth v. Russo*, 594 Pa. 119, 126, 934 A.2d 1199, 1203 (Pa.2007).

In arguing the Superior Court erred in affirming the trial court's denial of his motion to suppress the evidence obtained during the inventory search of his vehicle, Appellant maintains that Corporal Wealand did not have "lawful custody" of his vehicle because there was no issue of public safety, and, therefore, no basis for his decision to tow the vehicle. Appellant's Brief at 14. Specifically, Appellant asserts:

> Corporal Wealand admitted that the vehicle posed no detriment to the flow of traffic and no safety hazard. The vehicle was legally parked at the curb, and there was nothing to indicate that the vehicle was damaged in any way. Appellant's vehicle was moveable and it was not obstructing traffic. There was no valuable property within plain view. Moreover, Appellant notified Corporal Wealand that he had a friend who would be able to pick up the car, thus securing the vehicle and the property within.

*Id.* at 14–15 (record citations omitted).

Appellant contends that, because Corporal Wealand had no basis to tow his vehicle, there was no basis for Corporal Wealand to conduct an inventory search of his vehicle, and, therefore, that the inventory search violated his rights under the Fourth Amendment to the United States Constitution and under Article 1, Section 8, of the Pennsylvania Constitution.[3] Appellant further argues that, once Corporal Wealand discov-

---

**3.** In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991), this Court held that the policies underlying the exclusionary rule are substantially broader under Article I, Section 8 than under federal Fourth Amendment jurisprudence. Although Appellant refers to the Fourth Amendment and Article 1, Section 8 collectively throughout his brief, he offers no argument as to how Article 1, Section 8 affords him greater protection than the Fourth Amendment. Thus, for purposes of this appeal, we find the Fourth Amendment and Article I, Section 8 to be coextensive.

ered contraband in the eyeglass case, the alleged inventory search became an investigatory search for which Corporal Wealand was required to obtain a warrant.

The Commonwealth responds that, pursuant to 75 Pa.C.S.A. § 6309.2, Corporal Wealand was required to immobilize Appellant's vehicle after determining the vehicle did not have a valid emissions sticker and Appellant had a suspended license. The Commonwealth further suggests that, once a vehicle has been legally immobilized, police have "lawfully taken custody of the vehicle," and should be permitted to conduct an inventory search for the protection of the property owner and the police against claims of lost or stolen property. Commonwealth's Brief at 11. Finally, the Commonwealth argues that, once police discover contraband during a valid inventory search, they may continue the inventory search without stopping to obtain a search warrant.

Section 6309.2 of Pennsylvania's Motor Vehicle Code provides, in relevant part:

(a) **General rule.**—Subject to subsection (d), the following shall apply:

(1) If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, . . . as verified by an appropriate law enforcement officer in cooperation with the department, the law enforcement officer shall immobilize the vehicle . . . or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

\* \* \*

(b) **Procedure upon immobilization.**—

(1) When a vehicle is immobilized pursuant to subsection (a)(1), the operator of the vehicle may appear before the appropriate judicial authority within 24 hours from the time the vehicle was immobilized. The appropriate judicial authority may issue a certificate of release upon:

(i) the furnishing of proof of registration and financial responsibility by the owner of the vehicle; and

(ii) receipt of evidence that the operator of the vehicle has complied with the pertinent provisions of Title 42 (relating to judiciary and judicial procedure) and this title.

\* \* \*

(3) If a certification of release is not obtained within 24 hours from the time the vehicle was immobilized, the vehicle shall be towed and stored by the appropriate towing and storage agent under subsection (c).

**(c) Procedure upon towing and storage.—**

(1) Except as provided in paragraph (2), the following steps shall be taken:

(i) The appropriate judicial authority shall notify the appropriate law enforcement officer of the county in which the violation occurred.

(ii) The officer notified under subparagraph (i) shall notify the appropriate towing and storage agent to tow and store the vehicle ... and provide notice by the most expeditious means and by first class mail, proof of service, of the towing, storage and location of the vehicle ... to the owner of the vehicle ... and any lienholder....

\* \* \*

**(d) Recovery of towed and stored vehicle.—**

(1) The owner or lienholder of any vehicle ... which has been towed and stored under this section may obtain possession of the vehicle ... by:

(i) furnishing proof of valid registration and financial responsibility; and

(ii) (A) if the towing and storage resulted from the operation of the vehicle ... by the owner, paying all fines and costs associated with the towing and storage of the vehicle ... and any other ... outstanding fines and costs of the owner....

75 Pa.C.S.A. § 6309.2(a)-(d).

As a preliminary matter, we note the distinction between the concept of immobilizing a vehicle, and towing and storing,

or impounding a vehicle. Unfortunately, neither the term "immobilize," nor the term "impound," both of which are relevant in the instant case, are defined in Pennsylvania's Motor Vehicle Code. However, "immobilize" generally is defined as "to prevent freedom of movement or effective use of." *Webster's New Collegiate Dictionary* 568 (1980). A vehicle may be immobilized in place by means of a "boot" or other locking device. "Impound" is defined as "1 a: to shut up in or as if in a pound: confine b: to seize and hold in the custody of the law." *Id.* at 572.

Prior to the 2002 amendments to Section 6309.2(b)(3), the term "impounding" was used in place of "towing and storage," and it is unclear why the legislature chose to amend the statutory language in this manner. Regardless, for purposes of Section 6309.2, which pertains specifically to the "[i]mmobilization, towing and storage" of a vehicle for driving without operating privileges or registration, we discern no distinction between a vehicle which has been "impounded" and one that has been "towed and stored."[4] The question before us is whether Corporal Wealand had authority pursuant to Section 6309.2 to do anything other than immobilize Appellant's vehicle under the circumstances of the instant case.

We agree with the Commonwealth that, pursuant to the language of Section 6309.2(a)(1), Corporal Wealand was required to *immobilize* Appellant's vehicle after learning Appellant had a suspended license. However, as discussed below, we conclude that Corporal Wealand did not have the authority

4. Although, under the statutory scheme, an "impoundment" generally is initiated by judicial order, *see, e.g.,* 75 Pa.C.S.A. §§ 6309(a), 6309.1(b), and a "towing and storage" may be initiated by the police, *see id.* § 6309.2, it appears the latter action also requires a judicial order. Under subsections 6309.2(a)(1) and (2), a law enforcement officer who, in the interest of public safety, directs that a vehicle be towed and stored, must first notify the appropriate judicial authority. Under subsections 6309.2(c)(1)(i) and (ii), the appropriate judicial authority shall then notify the appropriate law enforcement officer of the county in which the violation occurred, and that law enforcement officer shall notify the appropriate towing and storage agent to tow and store the vehicle. Regardless, we conclude that any distinction between "impoundment" and "towing and storage" is of no consequence to our resolution of the instant case.

under Section 6309.2(a)(1) to tow Appellant's vehicle, and hold, therefore, that the vehicle inventory search of Appellant's vehicle was improper.

Section 6309.2(a)(1) provides that, where a person operates a vehicle while his or her license is suspended, a law enforcement officer shall immobilize the vehicle and notify the appropriate judicial authority, or, *"in the interest of public safety, direct that the vehicle be towed and stored* by the appropriate towing and storage agent." 75 Pa.C.S.A. § 6309.2(a)(1) (emphasis added). In holding that Corporal Wealand lawfully towed Appellant's vehicle, the Superior Court relied on the reasoning set forth in *Thompson, supra,* and stated:

> Applying the reasoning set forth in *Thompson* to the matter *sub judice,* we are compelled to reach the same result. First, Appellant does not dispute the initial stop of his vehicle which Corporal Wealand lawfully conducted when Appellant failed to use his turn signal before entering the flow of traffic. As he approached the driver's side of the vehicle, Corporal Wealand observed the vehicle bore no emissions sticker. While processing Appellant's information, Corporal Wealand also learned Appellant's driver's license had been under suspension. Appellant was the sole occupant of the vehicle; as such, no one was present to legally operate it. Corporal Wealand completed two traffic citations, one for the driver's license and one for the inspection violation, and then properly immobilized Appellant's vehicle and informed Appellant it would need to be towed, as his operating privileges were under suspension.

*Lagenella,* 17 A.3d at 1264 (citations omitted).

 However, the court in *Thompson,* consistent with Section 6309.2, expressly recognized:

> [P]ursuant to section 6309.2(a)(1), an officer who stops a vehicle operated by a person whose driving privilege is, *inter alia,* suspended, is faced with two options: immobilize the vehicle in place or, if it poses public safety concerns, have it towed and stored at an impound lot. . . .

The relevant requirements for purposes of immobilization are: (i) the person operates a motor vehicle while the person's operating privilege is suspended ... and (ii) the vehicle does not pose public safety concerns.

For purposes of towing, the requirements are: (i) the person operates a motor vehicle while the person's operating privilege is suspended ... *and (ii) the vehicle poses public safety concerns warranting its towing and storage at an impound lot.*

999 A.2d at 620 (emphasis added).

■ During direct examination at the suppression hearing, Corporal Wealand offered no testimony indicating that Appellant's vehicle posed an issue of public safety. Indeed, when defense counsel asked Corporal Wealand whether Appellant's vehicle was disabled or damaged when it came to rest two feet from the curb, Corporal Wealand indicated that it was not. N.T. Suppression Hearing, 9/22/09, at 15. When questioned further, Corporal Wealand stated that there was no broken glass around the vehicle, and that the parked vehicle was not impeding the flow of traffic in any manner. *Id.* at 15–16. Finally, Corporal Wealand testified that there were no items of value in plain view in the vehicle. *Id.* at 16. Accordingly, based on our review of the record, the Commonwealth failed to introduce any evidence that Corporal Wealand's decision to tow Appellant's vehicle was based on public safety. Thus, under Section 6309.2(a)(1) and its own decision in *Thompson,* the Superior Court's holding that Corporal Wealand engaged in a proper inventory search of Appellant's vehicle was erroneous.[5]

■ Notwithstanding the above, the Commonwealth suggests that, even if there were no basis to tow Appellant's vehicle pursuant to Section 6309.2(a)(1), Corporal Wealand

---

5. Although the Commonwealth asserts in its brief that "the Harrisburg Police Bureau ... has a policy mandating that the vehicle be towed," Commonwealth's Brief at 13, as noted previously, the record does not contain a copy of this towing policy. *See supra* note 2. Thus, we leave for another day the question of whether such a policy would be valid in light of the specific limitations of Section 6309.2.

was authorized to conduct a vehicle inventory search after he lawfully immobilized Appellant's vehicle.

■■ The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution, protect individuals from unreasonable searches and seizures. U.S. Const. amend. IV; Pa. Const. art. 1, § 8. Generally, law enforcement must obtain a warrant prior to conducting a search; however, there are certain exceptions to the warrant requirement. *Commonwealth v. Petroll,* 558 Pa. 565, 575, 738 A.2d 993, 998 (1999). One such exception, and the one at issue in the case *sub judice,* is an inventory search. *South Dakota v. Opperman,* 428 U.S. 364, 369, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).

■ The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant. *Commonwealth v. Nace,* 524 Pa. 323, 327, 571 A.2d 1389, 1391 (1990). In the seminal case of *Opperman, supra,* the high Court observed that inventory searches of impounded vehicles serve several purposes, including (1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned. 428 U.S. at 369, 96 S.Ct. 3092.

■ An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle. *Opperman,* 428 U.S. at 375, 96 S.Ct. 3092.[6] In *Commonwealth v. Henley,* the Pennsylvania Superior Court, citing *Opperman,* explained:

6. The requirements for a valid inventory search are distinct from those which must be established to justify a warrantless *investigatory* search of an automobile—namely, probable cause to search and exigent circumstances. *Commonwealth v. White,* 543 Pa. 45, 50–51, 669 A.2d 896,

In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, i.e., have lawful custody of the automobile. The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.

The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.

909 A.2d 352, 359 (Pa.Super.2006) (*en banc*) (citations omitted). A protective vehicle search conducted in accordance with standard police department procedures assures that "the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function." *Opperman*, 428 U.S. at 375, 96 S.Ct. 3092.

In support of its argument, the Commonwealth relies on *Thompson*, wherein a police officer observed the appellant sitting in a vehicle in front of a school with the vehicle's engine running and loud music playing from the radio. The vehicle was legally parked, but the officer decided to investigate because the appellant was much older than the group of students that surrounded the vehicle. The officer asked to see the appellant's license and registration, and learned the appellant's license was suspended. The officer advised the appellant that the vehicle would be impounded under the City of Philadelphia's "Live Stop" rule.[7] The officer then issued the appellant a ticket, and another officer conducted an inventory

900 (1995); *Commonwealth v. Henley*, 909 A.2d 352, 359 (Pa.Super.2006) (*en banc*).

7. This rule required the "immediate immobilization in place or towing at a different location of 'vehicles found to be operat[ed] in violation of certain state motor vehicle statutes.'" *Thompson*, 999 A.2d at 617 n. 1 (citation omitted).

search of the vehicle in preparation to have it immediately impounded. During the search, police discovered marijuana and the appellant was charged with illegal possession of marijuana. The appellant filed a pretrial motion to suppress evidence of the drugs, arguing, *inter alia,* that the inventory search of the vehicle was illegal because Section 6309.2(b) does not permit police to impound a vehicle, in the absence of any threat to public safety and convenience, for a period of 24 hours from the time the vehicle was immobilized, and that, in his case, the vehicle was legally parked and did not pose a threat to public safety.[8] The trial court denied the motion, and the appellant was convicted, but sentenced to no further penalty.

On appeal, the Superior Court framed the issue as "whether the police officers could conduct an inventory search of an immobilized vehicle." 999 A.2d at 619. The court answered this question in the affirmative, concluding "[a] vehicle is in the lawful custody of the police as soon as the vehicle has been lawfully immobilized." *Id.* at 621. The *Thompson* court further reasoned that the concerns justifying an inventory search of a vehicle when it is towed and stored at an impound lot are equally present when the vehicle is immobilized in place, and whether the vehicle has been immobilized or towed is irrelevant for purposes of an inventory search analysis. *Id.* at 623. The court explained that, as the owner of the vehicle was not present when the vehicle was immobilized and there was no one to take physical control of the vehicle, it saw "at the very least two purposes for the police to conduct an inventory search," including protection of the owner's property

---

**8.** As discussed further *infra,* when a vehicle is immobilized pursuant to Section 6309.2(a)(1), the operator of the vehicle has 24 hours from the time of immobilization to appear before the appropriate judicial authority; furnish proof of registration and financial responsibility by the owner of the vehicle, as well as evidence that the operator of the vehicle has complied with the pertinent provisions of, *inter alia,* the Motor Vehicle Code; and obtain a certificate of release. 75 Pa.C.S.A. § 6309.2(b). If a certificate of release is not obtained within 24 hours, the vehicle will be towed and stored by the appropriate towing and storage agent. *Id.* § 6309.2(b)(3). This is referred to as the 24–hour rule.

while in police custody and protection of the police against claims of disputes over lost or stolen property. *Id.*

 Herein, consistent with *Thompson*, the Commonwealth asks this Court to announce a rule "providing that police can conduct an inventory search of a vehicle that is immobilized and/or going to be towed unless the vehicle can still be operated and a person is present who is authorized to move the vehicle." Commonwealth's Brief at 12. We decline the Commonwealth's invitation in this regard, and, for the following reasons, hold that a vehicle which has simply been immobilized in place is not in the lawful custody of police for purposes of an inventory search.

In *Opperman*, the high Court determined that the inventory search of the appellant's vehicle was proper, *inter alia*, because *the vehicle had been properly impounded*, and was, therefore, in lawful police custody. The Court explained:

The ... police were indisputably engaged in a caretaking search of a lawfully impounded automobile. The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongs.

428 U.S. at 375, 96 S.Ct. 3092 (citation omitted).[9]

In *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Court also suggested that a vehicle is

9. The *Opperman* Court, at one point in its discussion of reasonable inventory searches, stated that it "has consistently sustained police intrusions into automobiles impounded or *otherwise in lawful police custody* where the process is aimed at securing or protecting the car and its contents." 428 U.S. at 373, 96 S.Ct. 3092 (emphasis added). While the statement "or otherwise in lawful police custody" might suggest, if taken out of context, that lawful custody encompasses situations in addition to impoundment, the Court's discussion of the specific decisions in which it found vehicle inventory searches to be proper suggests that an immobilized vehicle is not "in lawful police custody." *See id.* at 373–375, 96 S.Ct. 3092 (discussing *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (inventory search of a car impounded under the authority of a state forfeiture statute, which was conducted a week after the car had been impounded, was reasonable

in lawful police custody for purposes of an inventory search only when the vehicle has been impounded. Therein, the appellant challenged a police inventory search of his van on the basis that, *inter alia,* the police had "discretion to choose between impounding his van and parking and locking it in a public parking place," *id.* at 375, 107 S.Ct. 738 and that, in choosing to impound the vehicle, the police subjected him to an unconstitutional search. The high Court rejected this argument, stating:

> nothing in *Opperman* or [*Illinois v. Lafayette,* 463 [462] U.S. 640 [103 S.Ct. 2605, 77 L.Ed.2d 65] (1983) (inventory search of personal effects of an arrestee at police station permissible under Fourth Amendment) ], prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.

*Id.* at 376, 107 S.Ct. 738. The Court concluded the police had properly exercised their discretion to impound the vehicle in light of standardized criteria "related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it," *id.* at 376, 107 S.Ct. 738 suggesting that the inventory search of the appellant's vehicle would not have been proper had the police simply parked and locked Appellant's vehicle instead of impounding it. Accordingly, Fourth Amendment jurisprudence suggests that, in order for a vehicle to be in lawful police custody, the vehicle must have been lawfully impounded. *See also State v. Gauster,* 752 N.W.2d 496, 502 (Minn.2008) ("Because it is the act of impoundment that 'gives rise to the need for and justification of the inventory [search],' the threshold inquiry when determining the

under the circumstances); *Harris v. U.S.,* 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (upholding introduction of evidence discovered by police officer as he was securing an impounded vehicle from the elements after conducting inventory search); *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (upholding search of vehicle towed to private garage because police believed the incapacitated driver, who was a police officer, had been in possession of his service weapon and that weapon was still in the car and available to vandals)).

reasonableness of an inventory search [under the Fourth Amendment] is whether the impoundment of the vehicle was proper.").

Moreover, the language of Section 6309.2(b) regarding the procedure following immobilization of a vehicle further suggests such a vehicle is not in police custody. When a person is found operating a vehicle while the person's license is suspended (and towing is not necessary) Section 6309.2(a)(1) requires that "the law enforcement officer shall immobilize the vehicle" and then notify "the appropriate judicial authority." 75 Pa.C.S.A. § 6309.2(a)(1). When a vehicle is immobilized pursuant to Section 6309.2(a)(1), the operator of the vehicle has 24 hours from the time of immobilization to appear before the appropriate judicial authority, who may issue a certificate of release upon presentation of the necessary paperwork. *Id.* § 6309.2(b). If a certification of release is not obtained within 24 hours, the appropriate judicial authority shall notify the appropriate law enforcement officer of the county in which the violation occurred, and that officer shall then contact the appropriate towing and storage agent to tow the vehicle. *Id.* § 6309.2(c).[10] Thus, upon immobilization, the vehicle's operator may seek release of the vehicle from the *judicial* authority, not the police; and only upon the vehicle operator's failure to obtain a certification of release within 24 hours will the judicial authority notify law enforcement, who, at that time, shall arrange for the towing and storage of the vehicle. These procedures indicate that a vehicle that is simply immobilized is not within the lawful custody of the police.

Accordingly, we reject the Commonwealth's position that an inventory search is justified upon immobilization of a

10. Contrary to Justice Eakin's suggestion, the majority has not *sua sponte* imposed a requirement that vehicles "sit there for 24 hours before the officer could remove it from the street via tow truck," Dissenting Opinion at 454, 83 A.3d at 107; rather, the statute itself requires either immobilization, or, if there is an issue of public safety, immediate towing and storage. 75 Pa.C.S.A. § 6309.2(a)(1). The statute further allows the operator of the vehicle 24 hours to present the necessary paperwork and obtain a certificate of release, 75 Pa.C.S.A. § 6309.2(b); if the operator fails to take action within the prescribed period, the vehicle may then be towed.

vehicle, and hold that a warrantless inventory search of a vehicle is permissible only when the police have lawfully towed and stored, or impounded the vehicle. To the extent *Thompson* holds otherwise, that decision is disapproved. As Corporal Wealand's towing of Appellant's vehicle was unlawful, so was his inventory search of Appellant's vehicle.

We do not suggest that Corporal Wealand commenced the inventory search of Appellant's vehicle in bad faith, or with an investigatory motive. Corporal Wealand advised Appellant, albeit erroneously based on the record before us, that he was required to tow Appellant's car because Appellant's license was suspended. Corporal Wealand informed Appellant that he was required to perform an inventory search *before* he began the search, and thus before he discovered the drug residue in the eyeglass case. Upon discovering the drug residue in the eyeglass case, the officer testified that he continued the inventory search in accordance with the standard policy for inventorying the contents of a vehicle that was going to be towed. Nevertheless, because there was no basis for Corporal Wealand to tow Appellant's vehicle in the first instance, the inventory search of Appellant's vehicle was improper, and the fact that Corporal Wealand performed the vehicle inventory search in accordance with a standard inventory policy is immaterial.

In light of our determination that there was no legal basis for Corporal Wealand to tow Appellant's vehicle, and, as a result, that the vehicle inventory search of the vehicle was improper, evidence of the weapons found in the trunk of Appellant's vehicle should have been suppressed.[11] Accordingly, we reverse the order of the Superior Court and remand to the Superior Court for remand to the trial court for further proceedings, with instructions that evidence of the weapons is to be suppressed.

Order reversed. Case remanded.

11. As a result of this determination, we do not reach the question of whether the discovery of contraband by a police officer during a valid vehicle inventory search transforms the remainder of the search into an investigatory search for which the officer must obtain a warrant.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices BAER and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice EAKIN files a dissenting opinion.

Justice SAYLOR, concurring.

I agree with the majority's conclusion that an inventory search was not warranted on the particular facts of this case, as well as with its rejection of the bright-line rule, proposed by the Commonwealth, that all vehicle immobilizations justify constitutionally valid inventory searches. To the extent the majority opinion reflects a bright-line rule to the converse (*i.e.*, that no inventory searches conducted in connection with immobilizations may be valid), however, I remain circumspect and reserve my own judgment.

Justice EAKIN, dissenting.

The majority resolves this case on the basis that the officer had no authority to "impound" the vehicle. Majority Op., at 451–53, 83 A.3d at 105–06. There were two initial citations issued here—one for the accused driving with a suspended license, and one because the car had no emissions sticker. These facts are not challenged; thus, appellant could not drive the car away, and in fact the car itself could not be driven away as it was not in compliance with the requirements of the law. *See* 75 Pa.C.S. § 4706(c)(5) ("It is unlawful to operate a subject vehicle without evidence of emission inspection or certification by an authorized agent[.]"). Apparently, the majority would require the car to sit there for 24 hours before the officer could remove it from the street via tow truck, at which time it could be searched. *See* Majority Op., at 451–52, 83 A.3d at 105.

In parlance of Fifth Amendment cases, this car was no longer free to go. While appellant claims it was not in custody of the police, this car was seized and in police possession. The distinctions between being immobilized and impounded seem

in this case as unavailing in Fourth Amendment analysis as in Fifth Amendment jurisprudence.

As such, the policy of the department applied, and I would find the search was lawful.