J-S10005-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                   : PENNSYLVANIA
                                                   :
                    v.                             :
                                                   :
                                                   :
                                                   :
JONATHAN DAVION TORRES                   :
                                                   :
                    Appellant            :      No. 1377 MDA 2020

Appeal from the Judgment of Sentence Entered October 23, 2020
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0003819-2019

BEFORE:   MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY MURRAY, J.:                        **FILED MAY 13, 2021**

Jonathan Davion Torres (Appellant) appeals from the judgment of

sentence entered after a jury found him guilty of persons not to possess

firearms. ***See*** 18 Pa.C.S.A. § 6105(a)(1). Appellant contends the trial court

erred in denying his suppression motion. Upon review, we affirm.

The trial court recounted the evidence presented at the suppression

hearing as follows:

> On January 25, 2019, Chyquel Young-Key was shot dead in
> the second-floor apartment located at 347 Spring Street in the
> City of Reading. Criminal Investigator Scott [E]rrington
> [(Errington)] of the City of Reading Police Department was
> conducting an investigation [into] the killing. Due to statements
> made by one Lekeya Copeland, [E]rrington identified [Appellant]
> . . . as a possible suspect in the shooting.
>
> Knowing that [Appellant] was on state parole [for a felony
> conviction of aggravated assault], [E]rrington contacted

_____

[*] Retired Senior Judge assigned to the Superior Court.

Christopher Hall [(Hall)], an agent of the state parole office. Hall informed [E]rrington that [Appellant] was scheduled for a regular office visit on February 4, 2019, and that there existed an outstanding warrant for [Appellant's] arrest for parole violations. Hall informed [E]rrington that [Appellant] was going to be taken into custody when he arrived for his office visit.

[Appellant] was driven to the parole office on Cherry Street by [] Javier Gonzalez [(Gonzalez)], who was operating a black Infiniti automobile [(the Infiniti)]. Gonzalez, believing that [Appellant's] meeting would last only a few minutes, was waiting for [Appellant] on Cherry Street. When taken into custody, [Appellant] informed Hall that Gonzalez had brought him to the office, and was waiting for him outside.

Hall spoke to [E]rrington by phone, informing him that [Appellant] had been taken into custody and that [Appellant] had no cell phone or other personal belongings on his person. Hall also informed [E]rrington that [Appellant] had been driven to the parole office by Gonzalez, who was parked outside, and was awaiting [Appellant's] return. Hall approached Gonzalez and asked him if [Appellant] had left any property in the [Infiniti] before he came into the office. Gonzalez responded that [Appellant] had not left anything in the car. Hall informed Gonzalez that [Appellant] was in custody and would not be released. After being informed that [Appellant] was in custody and had no personal belongings with him when arrested at the parole office, [E]rrington contacted a patrol unit and asked the officers therein to proceed to the Cherry Street area, observe the [] Infiniti, and if they observed any traffic violations, to stop the vehicle.

Officers Eric Koller [(Koller)] and Mark Lacek of the City of Reading Police Department were in the [responding] patrol unit, which arrived at the area prior to Hall's informing Gonzalez that [Appellant] was in custody. Koller observed that the windows of the Infiniti automobile were tinted to a greater extent than is allowed under Pennsylvania law, as well as the fact that Gonzalez pulled into traffic when leaving the area without utilizing his turn signal. Both of these observations constituted violations of the Pennsylvania Motor Vehicle Code on the part of Gonzalez, and the vehicle was stopped after a short distance.

Upon approaching the vehicle, Officer Koller made inquiry of the dispatcher as to whether or not Gonzalez had any outstanding warrants, as well as his [motor vehicle] licensing status. Although there were no warrants for Gonzalez, Koller learned that [Gonzalez's] driver's license was suspended, and informed Gonzalez that he would not be permitted to move the vehicle further.

[E]rrington then arrived in the area and approached the [Infiniti]. He observed what appeared to be three cell phones in the console area of the vehicle and asked Gonzalez about ownership. Gonzalez indicated that one cell phone, the largest in size, belonged to him, and that the other two, **an iPhone and an Android, belonged to** [**Appellant**; Gonzalez stated he] had seen [Appellant] make a call on the iPhone before [Appellant] left it in the vehicle. Because Gonzalez could not be permitted to drive the vehicle further, and because, when stopped, Gonzalez was partially blocking traffic, the vehicle was towed to a holding area at City Hall. After the vehicle was impounded, [E]rrington procured a **search warrant** for the contents of both the vehicle and **the two phones belonging to** [**Appellant**].

While executing that warrant, the search of the vehicle disclosed significant amounts of United States currency, as well as cocaine. Since those items were not included in the list of items to be searched for pursuant to the first warrant, [E]rrington procured a second warrant which was executed the following day.

From the iPhone identified as belonging to [Appellant, police] retrieved images of [Appellant] wielding firearms, which he was barred from possessing by virtue of his previous criminal record, including a conviction for felonious aggravated assault.

Trial Court Opinion and Order, 4/1/20, at 2-5 (emphasis added; citations, numbering and some capitalization omitted).

On July 31, 2019, the Commonwealth charged Appellant with a single count of persons not to possess firearms. On November 27, 2019, Appellant filed an omnibus pre-trial motion seeking suppression of any data contained on his cell phones seized from the Infiniti. The trial court conducted a hearing

on February 7, 2020. On April 1, 2020, the court entered its opinion and order denying suppression.

The matter proceeded to a jury trial on October 23, 2020. The jury found Appellant guilty of persons not to possess firearms, and the trial court immediately sentenced Appellant to 5 to 10 years in prison.

Appellant did not file post-sentence motions. Appellant timely filed a notice of appeal. Both Appellant and the trial court have complied with Pa.R.A.P. 1925. Appellant states his suppression issue as follows:

> Whether the trial court erred in denying Appellant's motion to suppress evidence as the Commonwealth lacked probable cause to seize the Appellant's phone following a traffic stop where there was no evidence that the phone was associated with any criminal conduct?

Appellant's Brief at 4.

Appellant argues the trial court erred in denying suppression because the police lacked probable cause to search data stored on Appellant's cell phone.[1] *See id.* at 8-15. Appellant claims: "Law enforcement went to great lengths to circumvent the warrant requirement" in order to seize Appellant's cell phones. *Id.* at 14. Appellant argues that "without a warrant and without [providing Appellant] an opportunity to allow for the retrieval of property, the police unlawfully seized the Appellant's cell phone by simply towing a vehicle to City Hall until a warrant could be obtained." *Id.* at 14-15. Appellant

---

[1] Appellant repeatedly refers to "cell phone" in the singular. We presume, however, that his challenge pertains to both of his cell phones.

- 4 -

contends, "[e]ven if a lawful search warrant was obtained after the seizure of the cell phone, the conduct by law enforcement in order to seize the vehicle that contained the phone was unlawful." *Id.* at 13.

Our standard of review is well-settled:

> When we review the ruling of a suppression court, we must determine whether the factual findings are supported by the record. When it is a defendant who appealed, we must consider only the evidence of the prosecution and so much of the evidence for the defense as, fairly read in the context of the record as a whole, remains uncontradicted. Assuming that there is support in the record, we are bound by the facts as are found and we may reverse the suppression court only if the legal conclusions drawn from those facts are in error.

*Commonwealth v. Brame*, 239 A.3d 1119, 1126 (Pa. Super. 2020) (citation and brackets omitted). Our scope of review is limited to the record developed at the suppression hearing, considering the evidence presented by the Commonwealth as the prevailing party and any uncontradicted evidence presented by Appellant. *Commonwealth v. Fulton*, 179 A.3d 475, 487 (Pa. 2018).

At Appellant's suppression hearing, the Commonwealth presented the testimony of Parole Agent Hall, Officer Koller, and Investigator Errington. Officer Koller and his partner stopped the Infiniti after observing two Motor Vehicle Code violations. *See* 75 Pa.C.S.A. §§ 3334(a), 4524(e)(1). Appellant

does not specifically challenge the lawfulness of the stop.[2]  Because Gonzalez's driver's license was suspended, and the Infiniti was located near a handicapped parking meter and fire hydrant where it was partially blocking traffic, police arranged for it to be towed.  **See** N.T., 2/7/20, at 19-21, 29.  On appeal, Appellant contends the police improperly failed to give him "and any other interested party" an opportunity to remove personal possessions from the Infiniti before it was towed.  Appellant's Brief at 13-14.

Pertinently, the Vehicle Code addresses "Immobilization, towing and storage of vehicle for driving without operating privileges or registration," and provides:

> If a person operates a motor vehicle . . . on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, . . . or where the person is unlicensed, . . . the law enforcement officer shall immobilize the vehicle . . . or, **in the interest of public safety, direct that the vehicle be towed** and stored by the appropriate towing and storage agent . . ., and the appropriate judicial authority shall be so notified.

75 Pa.C.S.A. § 6309.2(a)(1) (emphasis added); **see also Commonwealth v. Lagenella**, 83 A.3d 94, 101 (Pa. 2013) (detailing the requirements to tow a vehicle under subsection 6309.2(a)(1)).  This Court has stated, "Judges are

---

[2] To the extent Appellant baldly asserts "the conduct by law enforcement in order to seize the vehicle that contained the phone was unlawful," Appellant's Brief at 13, this claim is waived.  **See In re S.T.S., Jr.**, 76 A.3d 24, 42 (Pa. Super. 2013) ("[w]hen an appellant fails to develop his issue in an argument and fails to cite any legal authority, the issue is waived"; and "mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review"); **see also** Pa.R.A.P. 2119(a) (mandating an appellant develop an argument with citation to and analysis of relevant legal authority).

not in a position to second-guess a police officer's decision to tow a vehicle which, in the officer's opinion, may create a traffic hazard. To do so would seriously handicap legitimate traffic-control activities." ***Commonwealth v. Henley***, 909 A.2d 352, 364 (Pa. Super. 2006) (citation omitted).

Here, Appellant fails to advance any authority to support his undeveloped claim of police error in having the Infiniti towed without first affording Appellant or "another interested party" the opportunity to remove Appellant's personal items. Accordingly, this claim is waived. ***See In re S.T.S., Jr.***, ***supra***; Pa.R.A.P. 2119(a). In any event, our research discloses no support for a claim that police – when having a vehicle towed pursuant to subsection 6309.2(a)(1) – must delay towing to afford persons **absent from the scene** an opportunity to remove personal items before the vehicle is towed. ***See generally Henley***, ***supra***; ***Lagenella***, ***supra***.

We next address Appellant's claim that the search of his cell phones was unlawful. It is well-settled that a search of a cell phone requires a warrant. ***Fulton***, 179 A.3d at 487. A request to search a cell phone must provide a link between the cell phone and the crimes listed in the warrant. ***Commonwealth v. Johnson***, 240 A.3d 575, 577-78 (Pa. 2020).

Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution mandate that search warrants be supported by probable cause. ***Id.*** at 584. We have explained:

Before an issuing authority may issue a constitutionally valid search warrant, he or she must be furnished with information sufficient to persuade a reasonable person that probable cause exists to conduct a search. The standard for evaluating a search warrant is a totality of the circumstances test . . . . A magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

*Commonwealth v. Manuel*, 194 A.3d 1076, 1081 (Pa. Super. 2018) (*en banc*) (citations, quotation marks, and footnote omitted).

A reviewing court's duty, in turn, is merely to ensure the issuing authority had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, nontechnical manner.

*Johnson*, 240 A.3d at 585 (citation and quotation marks omitted).

Here, the trial court described the affidavit of probable cause from which it found probable cause to search Appellant's cell phones:

In the affidavit of probable cause, [Errington] recounted the details of the investigation into the murder of Chyquel Young-Key ("Young-Key") [on January 25, 2019], including the initial call from Lekeya Copeland ("Copeland") and law enforcement's response on the scene. Copeland initially told responding Reading Police Officers that Young-Key, an ex-boyfriend of Copeland, had broken into her apartment and a physical struggle ensued whereupon Young-Key grabbed Copeland from behind and began to shake her. That is when Copeland states Young-Key said "Watch out" and [Copeland] heard a gunshot. Copeland stated that she then ran downstairs and eventually called 911.

[F]or fear that potential digital evidence might be lost, a search warrant for Copeland's cell phone and the contents thereof was authorized and executed. [E]rrington reviewed the contents of Copeland's phone and found conversations between Copeland

and [Appellant, Copeland's paramour], as well as photographs and videos from [Appellant], whom Copeland referred to as "Pook" or "Pookie." A text message from [Appellant] to Copeland depicts an individual holding a black Glock 9mm pistol with [Appellant] texting, "Stoopid, I'm talking about my gun dumbass," and "It's ah glock I call them Gigi's stooped." [Appellant] also sent Copeland [an online retailer website] link to a [firearm] magazine fitted for a 9mm Glock firearm. [Errington] found a Facebook messenger conversation between Copeland and another friend in which [Copeland] states, in part, that "[C]hyquel broke in Pook was there and he shot him."

Copeland had two separate phone numbers for [Appellant] listed in her phone – one identified as an iPhone and another that was not. Likewise, public videos from [Appellant's] Facebook page show [Appellant] with an iPhone in his hand while he is filming with another phone.

Continuing in the affidavit of probable cause, [Errington] then relates the circumstances . . . regarding [Appellant's] arrest and the stop and eventual lawful seizure of Mr. Gonzalez's vehicle. [Errington] details that, while waiting for the vehicle to be towed, he observed several phone calls come in to the two cell phones identified as belonging to [Appellant,] and that one of the phones had [Appellant's] photograph as background wallpaper. . . . [Errington] called the number listed for [Appellant] from Copeland's cell phone and heard one of the phones inside the vehicle ring.

[Errington], along with another criminal investigator, conducted an interview with Copeland on February 5, 2019, during which Copeland stated that on January 25, 2019, she and [Appellant] were at her residence when Young-Key entered the apartment and began to assault Copeland. As the assault spilled into the hallway outside of the apartment, Copeland heard a gunshot and both Young-Key and Copeland fell to the floor. Copeland professed that she did not see the shooter, but assumed it was [Appellant,] as he was the only other person in the apartment and Copeland knew [Appellant] to possess firearms.

Based on the facts as presented in the affidavit of probable cause set forth in the application for search warrant, we find that the [Magisterial District Judge] was provided with sufficient probable cause to issue the warrant on the basis that there existed

a fair probability that evidence of criminal activity would be found on [Appellant's] cell phones. As such, we find that [Appellant's] claim lacks merit and the physical evidence should not be suppressed.

Trial Court Opinion and Order, 4/1/20, at 9-11.

Our review discloses that the court's analysis is supported by the law and the record, the latter of which belies Appellant's claim of lack of evidence linking his cell phones to criminal activity. Thus, the trial court did not abuse its discretion in denying Appellant's suppression motion. *See*, *e.g.*, *Commonwealth v. Freeman*, 128 A.3d 1231, 1243 (Pa. Super. 2015) (trial court properly denied accused's motion to suppress data stored on his cell phones seized pursuant to a search warrant, where affidavit of probable cause "provided the issuing magistrate with a substantial basis to conclude that there was a fair probability that evidence of criminal activity would be found on [accused's] cell phones."); *see also Brame*, *supra*; *cf. Johnson*, 240 A.3d at 589, 590 (trial court erred in denying motion to suppress contents of cell phone where affidavit of probable cause consisted of "barren facts and conclusory statements"; further stating that "what is missing here [is] some 'other evidence' suggesting [the accused] was engaged in drug dealing, or otherwise linking his cell phone to anything criminal." (footnote omitted)). Accordingly, Appellant's suppression issue does not merit relief.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/13/2021