J-S41005-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
:                   PENNSYLVANIA
:
v.                          :
:
:
DARRELL HEATH                   :
:
Appellant          :        No. 2925 EDA 2024

Appeal from the Judgment of Sentence Entered May 24, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0006607-2022

BEFORE:   BOWES, J., BECK, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                     **FILED FEBRUARY 18, 2026**

Darrell Heath appeals from the judgment of sentence of seven to

fourteen years in prison imposed following his conviction for illegal possession

of a firearm.  We affirm.

The trial court provided the following statement of facts:

On August 24, 2022, at approximately 11:15 p.m.,
Philadelphia Police Officer Christopher Smith observed a Toyota
Camry commit a motor vehicle violation by improperly crossing
the double yellow line on the 2100 block of Sedgley Avenue in the
city and county of Philadelphia.  The officer engaged his lights and
siren to effectuate a vehicle stop.  The vehicle came to a stop in
the middle of a crosswalk.  Officer Smith and his partner
approached the car.  Appellant, the sole occupant and driver, was
requested to produce his driver's license, registration[,] and
insurance.  Subsequently, a check by the officer of the information
provided revealed that Appellant was operating the vehicle
without valid insurance or registration.  Additionally, the officers
noticed that Appellant was wearing a gun holster, but initially saw

_____

[*] Retired Senior Judge assigned to the Superior Court.

no weapon. During their investigation, the officers removed Appellant from the vehicle. A search revealed a Glock 19 firearm behind the passenger seat. The officers checked their computer system to find if Appellant possessed a license for the weapon and found that he did not. Appellant was arrested, and the firearm was confiscated.

Trial Court Opinion, 3/26/25, at 1-2 (footnote omitted, some capitalization altered).

Appellant was charged with possession of firearms prohibited, firearms not to be carried without a license, and carrying firearms in public in Philadelphia. He filed a motion to suppress the gun obtained during the traffic stop, contending that Officer Smith conducted a warrantless search of his vehicle without probable cause or exigent circumstances. At the ensuing hearing, Officer Smith testified consistently with the above facts. He additionally explained that once he confirmed that Appellant had an illegal firearm somewhere in the car, he removed Appellant, handcuffed him, and placed him in the back seat of the police cruiser. Appellant then informed Officer Smith that the firearm was located in the map pocket behind the driver's seat. The officer proceeded to search that area of the vehicle, without success, and instead uncovered the firearm in the rear pouch of the passenger seat.

The officer's testimony also bore out that Appellant's car was going to be towed in accordance with Philadelphia's "Live Stop" program because "the registration [was] suspended" and Appellant lacked insurance. *See* N.T. Suppression, 10/2/23, at 13. He explained that this program requires officers

to tow uninsured and unregistered vehicles because they are "not safe to be on the road." *Id*. Officer Smith expounded on the Live Stop process as follows:

> [P]arking authority is notified and they come out and they tow the vehicle to whatever lot they have.
>
> Prior to the Live Stop, the tow operator taking the vehicle, we will do an inventory search just to make sure there's no firearms, money, contraband, or anything that could hurt the tow truck driver or be accused of taking.

*Id*. at 13-14 (some capitalization altered). The Commonwealth also played Officer Smith's bodycam footage from that evening, which showed that Appellant stopped his car in the middle of a crosswalk.

At the conclusion of testimony and oral argument, the court stated that there was no Fourth Amendment violation because, "even though the officer went out of sequence and did not wait until the inventory search . . ., it was inevitable that the firearm would have been found during a valid inventory search during a valid Live Stop[.]" *Id*. at 54-55 (some capitalization altered). The court therefore denied Appellant's suppression motion.

The matter proceeded to a jury trial where Appellant was convicted of possession of firearms prohibited, and the Commonwealth *nolle prossed* the remaining offenses. The court thereafter sentenced Appellant as mentioned above, and he filed a timely post-sentence motion seeking reconsideration of his sentence. By operation of law, the motion was denied.

This appeal followed, and the trial court ordered Appellant to submit a statement in accordance with Pa.R.A.P. 1925(b).[1]  He timely complied, and the court authored a responsive Rule 1925(a) opinion.  Appellant raises the following issue for our determination:  "Whether the [trial] court erred in denying [Appellant]'s motion to suppress via written order dated October 3, 2023[,] in the situation where the search of [Appellant]'s car was performed without a warrant and without probable cause."  Appellant's brief at 6.

We begin with the applicable legal principles:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the [suppression record] and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.  The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts.  Thus, the conclusions of law of the courts below are subject to our plenary review.

_____

[1] We remind the trial court that all Rule 1925(b) orders must specify, *inter alia*, "that the Statement shall be served on the judge pursuant to paragraph (b)(1) and both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement[,]" and "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall** be deemed waived."  Pa.R.A.P. 1925(b)(3)(iii)-(iv) (emphasis added).

*Commonwealth v. Phillips*, 327 A.3d 1236, 1241 (Pa.Super. 2024) (cleaned up).

This Court has explained that "[w]hen a police officer forcibly stops a motor vehicle, the stop constitutes a seizure within the meaning of the Fourth Amendment and activates constitutional protections against unreasonable searches and detentions." *Commonwealth v. Malloy*, 257 A.3d 142, 147-48 (Pa.Super. 2021) (cleaned up). Generally speaking, "warrantless vehicle searches require both probable cause and exigent circumstances." *Commonwealth v. Alexander*, 243 A.3d 177, 207 (Pa. 2020) (cleaned up).[2]

However, a warrantless search of a vehicle may be constitutional if it meets the requirements of the inevitable discovery doctrine. We have described this exception thusly:

---

[2] While police officers typically have the authority to conduct a protective sweep of a vehicle when they have reasonable suspicion that an occupant is armed and dangerous, *see Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994), the circumstances did not permit Officer Smith to do so here. Although he had reasonable suspicion that Appellant had access to a weapon based on the empty gun holster, Appellant was subject to immediate arrest when he admitted he possessed an unlicensed firearm. Officer Smith's concern for his safety was thus resolved once Appellant was removed from the vehicle, handcuffed, and placed in the back of the police cruiser with the fellow officer. *See Commonwealth v. Arrington*, 233 A.3d 910, 917-18 (Pa.Super. 2020) (concluding that an officer did not have authority to conduct a protective sweep once "Arrington was in handcuffs, positioned at the rear of his vehicle, out of reach of the passenger compartment, and being supervised by [officers]"); *Morris*, 644 A.2d at 724 (emphasizing that a protective sweep is justified where an appellant is not under arrest because he could gain access to the weapon when released). However, in light of our legal analysis herein, we nevertheless uphold the denial of the motion to suppress.

Implicit in this doctrine is the fact that the evidence would have been discovered despite the initial illegality.

If the prosecution can establish by a preponderance of the evidence that the illegally obtained evidence ultimately or inevitably would have been discovered by lawful means, the evidence is admissible. The purpose of the inevitable discovery rule is to block setting aside convictions that would have been obtained without police misconduct.

*Commonwealth v. Brinson*, 328 A.3d 1096, 1107 (Pa.Super. 2024) (cleaned up). Importantly, "the inevitable discovery doctrine is not a substitute for the warrant requirement. Police must demonstrate that the evidence **would** have been discovered absent the police misconduct, not simply that they somehow **could** have lawfully discovered it." *Id*. (cleaned up, emphases in original).

Police may execute a warrantless search of a vehicle through an inventory search, which is permissible where "(1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle." *Commonwealth v. Lagenella*, 83 A.3d 94, 102 (Pa. 2013). Relative to the first prong, "[t]he authority of the police to impound vehicles derives from the police's reasonable community care-taking functions[,]" which include "removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety." *Commonwealth v. Hennigan*, 753 A.2d 245, 255

(Pa.Super. 2000). As to the second element, the burden is on the Commonwealth to demonstrate that the inventory search "was conducted in accordance with a reasonable, standard policy[,]" which it may accomplish through "presenting testimony or other evidence from officers regarding the relevant policies in place." *Brinson*, 328 A.3d at 1107.

In sum, "under the inevitable discovery doctrine, suppression is . . . not required where the Commonwealth shows that the police would have lawfully towed the vehicle and that an inventory search would have been conducted under standard government policy and would have found the evidence." *Commonwealth v. Henderson*, 328 A.3d 509, 2024 WL 4235017, at *5 (Pa.Super. 2024) (non-precedential decision).

Appellant argues that the trial court erred in holding "that the gun likely would have been discovered during a subsequent inventory search pursuant to a Live Stop procedure[.]" Appellant's brief at 10-11. He claims that "[o]n any given day in Philadelphia, the front wheels of numerous vehicles partially encroach onto crosswalks[,]" and consequently Officer Smith did not have authority to "tow and impound the vehicle." *Id*. at 11. Appellant asserts that Officer Smith neglected to testify that he was going to tow the vehicle because it was parked on a crosswalk, and instead the court "*sua sponte*" determined "that the car was encroaching during the body cam [*sic*] footage and then predicated [its] reasoning upon this . . . observation." *Id*. Appellant also relies upon *Lagenella* for the proposition that his vehicle did not pose a risk

to public safety and therefore did not need to be towed. *Id*. at 15-18. He further states that this case is akin to *Brinson* because Officer Smith failed to provide evidence of a reasonable, standard policy for impounding and towing vehicles where the Commonwealth failed to introduce the Live Stop form at the suppression hearing. *Id*. at 12-13, 19-20.

In *Lagenella*, an officer pulled over the defendant for failing to use a turn signal. The officer informed Lagenella that since he lacked insurance, the vehicle had to be towed immediately and an inventory search conducted. Upon execution of the search, police uncovered illegal drugs. The officer did not provide an explanation or proof of his police department's towing policy at the suppression hearing. Accordingly, the High Court looked to 75 Pa.C.S. § 6309.2, which states that an officer only has the authority to impound or tow a vehicle where the driver lacks insurance or registration, and the twenty-four-hour period to provide that documentation has passed, or the vehicle poses a risk to public safety. Since the timeframe had not expired for Lagenella to provide proof of insurance, and his vehicle was otherwise safely parked, the Court held that the officer did not have authority to immediately tow the car. It thus concluded that because the tow was improper, the officer's inventory search was also illegal, even though he conducted the search "in accordance with the standard policy for inventorying the contents of a vehicle that was going to be towed." *Lagenella*, 83 A.3d at 106.

Later, in **Brinson**, this Court determined that the inevitable discovery doctrine did not apply to a warrantless K-9 search of a vehicle at a traffic stop, which uncovered narcotics. At the suppression hearing, the officer confirmed that Brinson lacked insurance and asserted that he could have towed the vehicle for that reason, and the evidence therefore would have been discovered during an inventory search, but it was discretionary under his police department's policy. He also explained that "there was no certain procedure for towing a vehicle." **Brinson**, 328 A.3d at 1109. This Court determined that since the officer "presented no further evidence or testimony regarding [the] polic[y] regarding tows and impounds for lack of insurance and, indeed, admitted that such seizures were discretionary[,]" we could not "say that any policy or procedure in place would have necessarily led to an inventory search[.]" **Id**. at 1110.

In concluding that the inevitable discovery doctrine applied to the case *sub judice*, the trial court provided the following analysis:

> Appellant's vehicle was subject to impoundment and towing due to Appellant's failure to produce proof of registration and insurance for his vehicle. Although there are circumstances in which a driver would be given the opportunity to subsequently produce the requisite documentation within a specified period of time (**see Lagenella**), Appellant's vehicle was posing a danger to the public as it was stopped in the middle of a crosswalk, and the officers could not permit Appellant's vehicle to remain in the unsafe location. The [trial] court did not agree with defense counsel's assertion that Appellant should have been allowed to move the vehicle to a safe location. As the [trial] court explained, allowing Appellant, or anyone, to operate an uninsured vehicle, even for a short distance of travel, is jeopardizing the public. . . . Therefore, Appellant's vehicle would have eventually been

- 9 -

impounded and towed pursuant to the Live Stop program, and subsequently an inventory search would have been conducted of Appellant's vehicle.

. . . .

Even though Officer Smith did not wait for Appellant's vehicle to be towed, an inventory search would have eventually been conducted pursuant to police procedure to secure and inventory the contents of Appellant's vehicle, and because said vehicle had been lawfully impounded, a search warrant would not have been required. During the proper inventory search of Appellant's vehicle, the Glock 19 firearm, located behind the passenger seat, would have been inevitably discovered.

Trial Court Opinion, 3/26/25, at 5-6 (some citations and capitalization altered).

The court's findings are supported by the record, and we agree that the inevitable discovery doctrine rendered this search constitutional. First, *Lagenella* is easily distinguishable from this matter because Appellant stopped his car in the middle of a crosswalk, which posed a threat to public safety, and officers therefore had the authority to tow it. *See Hennigan*, 753 A.2d at 255. The fact that Officer Smith did not state that he towed Appellant's vehicle for being in the crosswalk is immaterial. This Court reviewed the bodycam footage obtained from Officer Smith, which was played during the suppression hearing, and confirmed that Appellant stopped his car in that unsafe manner. Nevertheless, the officer also explained that the Live Stop program required him to tow Appellant's vehicle for safety purposes because it was uninsured and lacked proper registration. *See* N.T. Suppression, 10/2/23, at 13. The Commonwealth thus demonstrated that the tow was

- 10 -

executed consistent with law enforcement's "reasonable community care-taking functions." **Hennigan**, 753 A.2d at 255.

**Brinson** is also inapplicable. Unlike in that case, Officer Smith described the Live Stop program at the suppression hearing and explained its requirements for impounding and towing a vehicle. Although no Live Stop paperwork was introduced, the Commonwealth appropriately demonstrated that an inventory search would have been executed "in accordance with a reasonable, standard policy" through Officer Smith's testimony. **See Brinson**, 328 A.3d at 1107. The officer additionally confirmed that an inventory search immediately prior to a Live Stop tow is meant to protect the tow truck operator and the driver's property, *i.e.*, is for non-investigatory purposes. **See** N.T. Suppression, 10/2/23, at 13-14. In fact, the bodycam footage revealed that a tow truck operator had arrived on scene, and an inventory search was imminent. **Id**. at 49 (explaining that the bodycam footage "clearly state[d Officer Smith was] doing an inventory before [Appellant's car] g[ot] towed"). Hence, it was adequately established that Appellant's vehicle would have been towed and inventoried pursuant to a routine Live Stop procedure. **See Lagenella**, 83 A.3d at 102.

Accordingly, the Commonwealth proved that the firearm would have been inevitably discovered despite Officer Smith's warrantless search for it. Therefore, the suppression court did not err in denying Appellant's motion, and we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 2/18/2026