J. A32006/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :             PENNSYLVANIA
                                :
              v.                    :
                                :
DENNIS URGENT,                  :
                                :
              Appellant     :    No. 2829 EDA 2015

Appeal from the Judgment of Sentence August 27, 2015
In the Court of Common Pleas of Lehigh County
Criminal Division at No(s): CP-39-CR-0005396-2014

BEFORE: DUBOW, RANSOM AND PLATT, JJ.[*]

MEMORANDUM BY DUBOW, J.:         **FILED JANUARY 24, 2017**

Appellant, Dennis Urgent, appeals from the August 27, 2015 Judgment of Sentence entered by the Lehigh County Court of Common Pleas after a jury trial. Appellant challenges the denial of his suppression motion and the trial court's refusal to give a jury instruction on missing video footage of his traffic stop. After careful review, we affirm.

The trial court summarized the facts underlying the instant case as follows:

> [O]n June 1, 2014, at approximately 10:50 PM, Trooper Ron Mercatili of the Pennsylvania State Police, Fogelsville Barracks, was patrolling in a marked police cruiser and in full uniform westbound on Interstate I-78, Allentown, Lehigh County, Pennsylvania, when he observed a silver Honda Accord in front

---

[*] Retired Senior Judge Assigned to the Superior Court.

of him appearing to be traveling at a high rate of speed. Trooper Mercatili followed behind the silver Honda Accord for a period of one (1) mile and clocked the vehicle's speed during this time frame. He determined that the vehicle was traveling at 70 mph in a posted 55 mph zone. Consequently, Trooper Mercatili effectuated a traffic stop, utilizing lights and siren, in the area of mile marker 53 in Upper Macungie Township. Trooper Mercatili approached the Honda Accord and made contact with the driver of the subject vehicle. The driver was identified as [Appellant]. [Appellant] appeared extremely nervous during this initial contact, and would not make eye contact with Trooper Mercatili. In addition, [Appellant] was nervously shaking. In addition, Trooper Mercatili noticed the smell of air fresheners in the vehicle. In his training and experience, Trooper Mercatili testified that air fresheners are utilized to mask the odor of drugs. Trooper Mercatili observed a can of Febreeze in the vehicle, along with several air freshener sticks, thereby arousing his suspicion.

Trooper Mercatili ran a warrant check on [Appellant] through NCIC. It was learned that there was an active warrant for [Appellant's] arrest arising out of Allegheny County, Maryland for Possession With Intent to Deliver Cocaine. Upon receiving this information, Trooper Mercatili handcuffed [Appellant] and placed him in investigative detention in the back seat of his police vehicle. In addition, Trooper Mercatili contacted dispatch in order to confirm that the warrant was outstanding and being pursued by Allegheny County. While Trooper Mercatili was waiting for this confirmation, he asked [Appellant] if he would consent to a search of the vehicle. [Appellant] refused to consent. Consequently, Trooper Mercatili contacted Upper Macungie's K-9 Unit so that an exterior K-9 sniff of the vehicle could be performed. While waiting for the K-9 Unit to respond, Trooper Mercatili learned that Allegheny County did not want to pursue extradition of [Appellant]. At this point, [Appellant] was removed from the police cruiser, but was not free to leave, as a K-9 Unit was en route. In addition, [Appellant's] Pennsylvania Driver's License had expired on November 15, 2011, and he did not hold valid insurance on the vehicle. [Appellant] was formally issued a written citation for speeding at 11:38 PM.

At 11:40 PM, Officer Ryan Rhoads of the Upper Macungie Police Department arrived on scene with his drug detection canine. After completing an exterior sniff of the vehicle, Officer Rhoads

advised Trooper Mercatili that the canine had displayed positive alert behavior, indicating a presence of drugs. A search of the subject vehicle was performed and yielded the following: a large plastic bag containing leafy green vegetable matter, that later lab[-]tested positive for a little less than a pound of hydroponic marijuana, was located in the trunk; a digital scale and black vaporizer; two (2) cellular phones; and several air fresheners. [Appellant] also possessed Eight Hundred thirty ($830.00) Dollars in United States currency. Based on Trooper Mercatili's training and experience, Trooper Mercatili testified that multiple cellular phones are frequently utilized in drug transactions, and digital scales are commonly used to weigh out the drugs for distribution. [Appellant] was transported to the Pennsylvania State Police Fogelsville Barracks at 12:13 AM.

Trial Court Opinion, filed 7/7/15, at 3-5 (footnotes omitted).

Appellant was arrested and charged with one count each of Possession with Intent to Deliver ("PWID"); Intentional Possession of a Controlled Substance; Possession of Drug Paraphernalia; and Violating Maximum Speed Limits.[1] Appellant filed an Omnibus Pre-Trial Motion challenging, *inter alia*, the admissibility of evidence recovered from his vehicle. The trial court denied the motion, and Appellant elected to proceed by way of a jury trial.

During trial, Trooper Mercatili testified that the police cruiser he was operating the night of Appellant's arrest was equipped with a dashboard camera recording device. However, Trooper Mercatili also testified that the footage no longer existed as it had not been preserved. At the close of evidence, Appellant requested a jury instruction regarding the missing

---

[1] 35 P.S. § 780-113(a)(30); 35 P.S. § 780-113(a)(16); 35 P.S. § 780-113(a)(32); and 75 Pa.C.S. § 3362(a)(2) respectively.

footage, which the trial court denied. Appellant did not object, either at the charging conference when the request was denied or following the jury charge. *See* N.T. 7/27/15, at 103-04; N.T. 7/28/15, at 54.

On July 28, 2015, the jury found Appellant guilty of the three drug related charges, and the trial court subsequently found Appellant guilty of the speeding violation. On August 27, 2015, the trial court sentenced Appellant to an aggregate term of 18 to 48 months of imprisonment.

Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

On appeal, Appellant raises two allegations of error.

1. The trial court erred in denying [Appellant's] Pre[-T]rial Suppression Motion. The trial court failed to properly conclude that the traffic stop had ended upon the issuance of the warning and that [Appellant] should have been free to leave the area where he had previously been stopped for allegedly speeding.

2. The trial court erred in failing to provide the jury with an instruction on the Commonwealth[']s failure to maintain and produce the dash camera video of this traffic stop. The Court was requested to provide the jury with an instruction that the Commonwealth's failure to preserve and present that evidence [*sic*] could be used to conclude that the material contained on that video may be prejudicial to the Commonwealth's case. The Court refused that instruction and as a result there is no deterrent whatever to failing to maintain these videos of such traffic stops.

Appellant's Brief at 4.

## **Suppression Motion**

In his first issue, Appellant challenges the trial court's denial of his Motion to Suppress, averring that the police officer impermissibly prolonged

- 4 -

the traffic stop in order to obtain the canine sniff of his car, thus rendering the sniff and subsequent search illegal.[2]  **See** Appellant's Brief at 10-14, (citing, *inter alia*, **Rodriguez v. United States**, 135 S.Ct. 1609 (2015)).

Our well-settled standard of review in an appeal from an order denying a Motion to Suppress is as follows:

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.  Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.  Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

**Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

Under the Fourth Amendment to the United States Constitution, "the use of a well-trained narcotics-detection dog . . . during a lawful traffic stop, generally does not implicate legitimate privacy interests," and therefore does not require reasonable suspicion or probable cause.  **Illinois v. Caballes**, 125 S.Ct. 834, 838 (2005).  The "Fourth Amendment tolerates certain unrelated investigations that [do] not lengthen the roadside detention." **Rodriguez**, **supra** at 1614 (citations omitted).  However, police officers may not prolong the stop to conduct a canine search unless they have

---

[2] Appellant has not challenged the validity of the initial traffic stop.

reasonable suspicion or probable cause to believe criminal activity is afoot.

*Id.*

Under the Pennsylvania Constitution, however, a canine sniff constitutes a search that requires that an officer possess "reasonable suspicion for believing that narcotics [will] be found[.]" ***Commonwealth v. Rogers***, 849 A.2d 1185, 1190 (Pa. 2004). The reasonable suspicion that justifies a canine sniff will, in many circumstances, also justify any alleged prolongation of the traffic stop. Our Supreme Court has summarized the reasonable suspicion jurisprudence as follows:

> A police officer may detain an individual in order to conduct an investigation if that officer reasonably suspects that the individual is engaging in criminal conduct. This standard, less stringent than probable cause, is commonly known as reasonable suspicion. In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give due weight to the specific reasonable inferences the police officer is entitled to draw from the facts in light of his experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Id.* at 1189 (citation and quotation marks omitted).

As an initial matter, we disagree with Appellant's underlying premise that the officer impermissibly prolonged the traffic stop in order to conduct a canine sniff. Because Appellant did not possess a valid driver's license and automobile insurance, at a minimum, the traffic stop remained ongoing until Trooper Mercatili determined what to do with the vehicle. ***See***

*Commonwealth v. Lagenella*, 83 A.3d 94, 101 (Pa. 2013) (noting that "an officer who stops a vehicle operated by a person whose driving privilege is, *inter alia,* suspended, is faced with two options: immobilize the vehicle in place or, if it poses public safety concerns, have it towed and stored at an impound lot."). Moreover, although Appellant was stopped for approximately an hour, almost all of that time was spent waiting for confirmation from Maryland on whether it wished to extradite Appellant. Thus, contrary to Appellant's contention, the traffic stop was not impermissibly prolonged.

We also conclude that Appellant's reliance on *Rodriguez* is misplaced. In *Rodriguez*, the United States Supreme Court held that where police officers **lack reasonable suspicion of criminal activity**, they may not extend a traffic stop beyond its intended purpose in order to conduct a canine sniff of the vehicle. *Rodriguez, supra* at 1616. The Supreme Court then remanded for the District Court to determine if reasonable suspicion justified detaining the driver beyond the purpose of the traffic stop. In the instant case, unlike *Rodriguez*, our review of the suppression record shows that Trooper Mercatili had reasonable suspicion that criminal activity was afoot almost immediately after the traffic stop began.

When Trooper Mercatili approached Appellant's vehicle after stopping it, he immediately noticed that Appellant was extremely nervous, to the point that Appellant was unwilling to make eye contact and was physically

shaking. N.T., 6/8/15, at 23. In his 4½ years of experience as a patrol officer with the Pennsylvania State Police, Trooper Mercatili believed Appellant was more nervous than a typical driver who has been pulled over for a traffic violation. *Id.* at 22-23. Appellant then became "confrontational" and "angry" when interacting with Trooper Mercatili. *Id.* at 23. In addition, Trooper Mercatili smelled the strong odor of air fresheners emanating from the vehicle as he stood outside the driver's side window. *Id.* at 13. He observed a can of Febreze air freshener in the car, and an unusually large number air freshener sticks in the vehicle's air vents. *Id.* at 15. Based on his experience, training, and education, Trooper Mercatili suspected that the air fresheners were a "masking agent" used to cover up the scent of drugs. *Id.* at 13, 15. Finally, upon running Appellant's name through NCIC, Trooper Mercatili learned that Appellant had an active warrant for his arrest in Maryland for Possession with Intent to Deliver Cocaine. *Id.* at 13. These factors taken together supported the Officer's reasonable suspicion that criminal activity was afoot that warranted further investigation with the assistance of the canine unit. We, therefore, conclude that the trial court properly denied Appellant's Motion to Suppress.

## Jury Instructions

In his second issue, Appellant avers that, because the Commonwealth failed to preserve the footage from Trooper Mercatili's dashboard camera, "a remedial [jury] instruction regarding destruction of evidence . . . is

appropriate because of the prejudice caused to [Appellant], even though there is no evidence of bad faith by [the Commonwealth]." Appellant's Brief at 18.

We review a trial court's refusal to give a requested jury instruction to "determine whether the record supports the trial court's decision." *Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa. Super. 2013) (quotation omitted). We are tasked with considering "whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case." *Id.* (quotation omitted). Before moving to the merits of our review, however, we address the Commonwealth's assertion that Appellant failed to preserve this claim.

As our Supreme Court has made clear, "[i]t is a bedrock appellate principle that issues not raised in the lower court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Sanchez*, 82 A.3d 943, 978 (Pa. 2013) (citation and internal quotation marks omitted). To properly raise and preserve a challenge to the jury instructions at trial, "the mere submission and subsequent denial of proposed points for charge that are inconsistent with or omitted from the instructions actually given will not suffice[.]" *Commonwealth v. Pressley*, 887 A.2d 220, 225 (Pa. 2005). Instead,

> [t]he pertinent rules . . . require a specific objection to the charge or an exception to the trial court's ruling on a proposed point to preserve an issue involving a jury instruction. Although obligating counsel to take this additional step where a specific

point for charge has been rejected may appear counterintuitive, as the requested instruction can be viewed as alerting the trial court to a defendant's substantive legal position, it serves the salutary purpose of affording the court an opportunity to avoid or remediate potential error, thereby eliminating the need for appellate review of an otherwise correctable issue.

*Id.* at 224 (citation omitted). *See also Commonwealth v. Parker*, 104 A.3d 17, 30 (Pa. Super. 2014) (holding that Appellant "waived his objection to the jury instructions because he failed to object after the jury had been charged."); *Commonwealth v. Baker*, 963 A.2d 495, 505-07 (Pa. Super. 2008) (holding that defendant's mere request for jury charges, even when "renewed" after jury was instructed, did not preserve his challenge to the instruction for appeal).

In the instant case, Appellant merely submitted a request for a proposed jury instruction. When the trial court denied the request, trial counsel did not object, instead saying only "Thank you, Your Honor." N.T., 7/27/15, at 103-04. Appellant also failed to object or comment on the omission after the trial court finished charging the jury. N.T., 7/28/15, at 54. We, therefore, conclude that Appellant's second claim is waived and decline to address the merits.[3]

---

[3] Moreover, Appellant has failed to explain what relevance the footage would have had during his jury trial, and how the court's decision to deny an instruction regarding the failure to preserve evidence "controlled the outcome of the case." *Sandusky, supra* at 667. Appellant argues at length about the video's potential to "have shown whether [Appellant] was nervous or refused to answer questions or whether the dog actually alerted to the vehicle [during the sniff]." Appellant's Brief at 17. While these issues

J. A32006/16

Judgment of Sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/24/2017</u>

---

may have been relevant to the suppression court's legal determinations regarding the search and seizure of Appellant's vehicle, we fail to see the relevance to a jury tasked only with determining Appellant's factual guilt or innocence. Accordingly, the trial court did not abuse its discretion or commit an error of law that controlled the outcome of the case. Therefore, even if Appellant had properly preserved the issue, he would not be entitled to relief.