J-S19024-22

2023 PA Super 189

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                                                 :            PENNSYLVANIA
                    Appellee           :
                                                 :
                                                 :
                                                 :
          v.                                :
                                                 :
                                                 :
                                                 :
ZAHIR DESHON WATKINS          :   No.  2209 EDA 2021
                                                 :
                    Appellant         :

Appeal from the Judgment of Sentence Entered September 27, 2021
in the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003701-2020

BEFORE: PANELLA, P.J., OLSON, J., and STEVENS, P.J.E.*

OPINION BY STEVENS, P.J.E.:                    **FILED SEPTEMBER 29, 2023**

Whether use of a License Plate Reader ("LPR") system to track Appellant's movements is a search under the Fourth Amendment is a question of first impression before this Court.  The purpose a license plate attached to a vehicle is to provide information, and such license plate is in plain view when the vehicle is operated on the roadways.  Thus we find there is no reasonable expectation of privacy, and such use of the LPR is not a search.

Zahir Deshon Watkins appeals from the September 27, 2021 aggregate judgment of sentence of time-served to 23 months' imprisonment imposed after he was found guilty in a bench trial of possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance,

_____
* Former Justice specially assigned to the Superior Court.

possession of a small amount of marijuana for personal use, possession of drug paraphernalia, and driving on roadways laned for traffic – driving within single lane.[1]  After careful review, we affirm the judgment of sentence.

The trial court summarized the relevant facts of this case as follows:

> On April 22, 202[0], Philadelphia Police Officer Anthony Mergiotti ("[Officer] Mergiotti") informed the Bensalem Township Police Department [] of a suspect believed to be selling narcotics at [a convenience store] located on [] Hulmeville Road [in] Bensalem Township[, Pennsylvania].  [Officer] Mergiotti provided the Bensalem [Township] Police Department with the suspect's vehicle registration information: a Volkswagen with license plate number LFR[XXXX]. Officer Brian Bielecki ("[Officer] Bielecki") of the Bensalem [Township] Police Department subsequently entered this registration information into the Bensalem [Township] Police Department's License Plate Reader ("LPR") system.[FN]  Upon entering this license plate into the database, [Officer] Bielecki discovered that the vehicle frequently traveled on the roadways near the Bensalem Township high school.
>
> On June 17, 202[0], Officer Connor Farnan ("[Officer] Farnan"), Officer Tyson Mathew ("[Officer] Mathew"), and [Officer] Bielecki from the Special Investigations Unit ("SIU") of the Bensalem [Township] Police Department were in the Bristol Pike area [of Bensalem Township] in an unmarked vehicle conducting surveillance [for] an unrelated investigation.  At approximately 7:44[ p.m., Officer] Bielecki received an email alert that the vehicle with the license plate LFR[XXXX] recently passed Bensalem [Township] High School, traveling southbound on Hulmeville Road. The three officers discussed this development

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(31)(i), (a)(32), and 75 Pa.C.S.A. § 3309(1), respectively.

and decided to locate the vehicle and gather evidence to corroborate the information received from [Officer Mergiotti] pertaining to [the vehicle's] involvement in suspected drug sales.

The officers found the vehicle and began to follow. At the time, the three officers did not intend to complete a vehicle stop. However, as they pursued the vehicle on Bristol Pike, the three officers observed the vehicle leave the lane of travel approximately three times, which is a violation of the Vehicle Code. [**See** 75 Pa.C.S.A. § 3309(1).] Due to safety concerns, [Officer] Mathew subsequently initiated a traffic stop. [Officer] Mathew switched on his lights and the vehicle pulled over to the side. [Officer] Mathew then approached the driver's side of the vehicle and spoke with the driver, who was later identified as Appellant. Meanwhile, [Officer] Bielecki approached the front right side of the vehicle and spoke with the only passenger[.]

As he was speaking to [the passenger, Officer] Bielecki detected an odor of burnt marijuana and observed approximately six air fresheners hanging from the rearview mirror. In light of his training and experience, multiple air fresheners are known to serve as masking agents, used to hide the smell of marijuana. [Officer] Bielecki asked [the passenger] if she had any marijuana in the [vehicle,] and she advised him that she had a bowl in her purse. Meanwhile, [Officer] Mathew returned to his police vehicle to check Appellant's license and registration. [Officer] Mathew found no warrants and no outstanding issues. Before returning to Appellant's vehicle, [Officers] Bielecki and Mathew briefly conferred and [Officer] Bielecki informed [Officer] Mathew that he smelled marijuana and that [the passenger] admitted to having drug paraphernalia in her purse.

The officers decided to implement an investigative tactic wherein they ask both occupants to exit the vehicle to be questioned separately. [Officer] Mathew returned to the driver's side and asked Appellant to

step out of the vehicle. Appellant refused. At this point, out of concern that Appellant would flee, [Officers] Mathew and Bielecki both reached into the [vehicle] and restrained Appellant: [Officer] Mathew from the driver's side and [Officer] Bielecki from the passenger's side. As [Officer] Mathew restrained Appellant, he smelled raw marijuana emanating from the vehicle. Throughout this process, Appellant informed the officers that he did not consent to [a] search of his car. Several additional officers arrived on scene to assist [Officers] Mathew and Bielecki.

After several minutes, officers physically removed Appellant from his car and, pursuant to Bensalem [Township] Police Department policy, completed an inventory search on scene to ensure the safety of Appellant's belongings. The vehicle was subsequently towed to a secure lot at the Bensalem [Township] Police Department headquarters. On June 18, 2020, Magisterial District Justice Michael Gallagher signed a search warrant for the vehicle. During a search pursuant to the warrant, [Officers] Mathew and Bielecki recovered $1,844.00 in cash, 227.6 grams of marijuana, a digital scale, and plastic baggies. On June 19, 2020, [Officer] Bielecki arrested Appellant pursuant to an arrest warrant.

[FN] LPRs are located around Bensalem Township as well as inside of police cars. An LPR records every license plate that comes within its camera lens frame, takes a picture, and uploads the license information (where the car was located when it came into the camera frame) into its database. If one of the captured license plates is expired, or the vehicle has been marked stolen, for example, the system sends an email to an active-duty police officer to inform him or her that the vehicle is nearby and provides its location. Officers can access this database and review a vehicle's LPR history.

Trial court opinion, 12/16/21 at 1-3 (citations to notes of testimony and some footnotes omitted).

Appellant was subsequently charged with PWID and related offenses in connection with this incident. On April 26, 2021, Appellant filed an **omnibus** pretrial suppression motion challenging the legality of the traffic stop as well as the ensuing search and seizure. Following a two-day hearing, the trial court denied Appellant's suppression motion on August 5, 2021. That same day, Appellant waived his right to a jury and proceeded to a bench trial.

As noted, the trial court found Appellant guilty of PWID, possession of a controlled substance, possession of a small amount of marijuana for personal use, possession of drug paraphernalia, and driving on roadways laned for traffic – driving within single lane. Appellant was found not guilty of obstructing administration of law or other government function.[2] On September 27, 2021, the trial court sentenced Appellant to an aggregate term of time-served to 23 months' imprisonment. Appellant was immediately paroled. This timely appeal followed on October 25, 2021.[3]

Appellant raises the following issues for our review:

> A. Did the trial court err in denying Appellant's motion to suppress where the use of a [LPR system] to track Appellant's movements constitutes a search?
>
> B. Did the trial court err in denying Appellant's motion to suppress where the search of

---

[2] 18 Pa.C.S.A. § 5101.

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant's vehicle was not justified as a reasonable inventory search?

Appellant's brief at 9.

Our standard of review in addressing a challenge to a denial of a suppression motion is well settled.

> [Our] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

**Commonwealth v. Jones**, 121 A.3d 524, 526 (Pa.Super. 2015) (citation omitted; brackets in original), **appeal denied**, 135 A.3d 584 (Pa. 2016).

Appellant first argues that the trial court erred in denying his suppression motion because the use of historical LPR data to track and locate his vehicle constituted a search subject to the protections of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Appellant's brief at 18.

Relying, in part, on the United State Supreme Court's decision in ***United States v. Jones***, 565 U.S. 400 (2012),[4] Appellant contends that he possessed "a reasonable expectation of privacy in his daily movements and in being able to drive around in his [vehicle] without being followed." Appellant's Brief at 14-15. Appellant avers that LPR data "was used to track [his] movements and to ultimately follow him and surveil him in hopes that he would be caught in the commission of a crime." ***Id.*** at 15. Appellant argues that because he "had an expectation of privacy in the movement of his vehicle … the extensive, electronic tracking and monitoring of his movements constitutes a search" that was conducted in violation of both the United States and Pennsylvania Constitutions. ***Id.*** at 18. We disagree.

"Both the Fourth Amendment of the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution guarantee an individual's freedom from unreasonable searches and seizures." ***Commonwealth v. Bostick***, 958 A.2d 543, 550 (Pa.Super. 2008) (citation and internal quotation

---

[4] In ***Jones***, the United States Supreme Court held that "the [g]overnment's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitute[d] a search" for purposes of the Fourth Amendment. ***Jones***, 565 U.S. at 404 (footnote omitted). In so ruling, the ***Jones*** Court reasoned that a Fourth Amendment search occurred because the government physically intruded upon a constitutionally protected area, namely the target's vehicle, when the government physically attached a GPS tracking device to the vehicle. ***Id.*** at 404-405, 413-414.

marks omitted), ***appeal denied***, 987 A.2d 158 (Pa. 2009); ***see also*** U.S. Const. amend. IV.[5]

This Court has recognized that "[t]he protection of the Fourth Amendment does not depend on a property right in the invaded place but does depend on whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." ***Commonwealth v. Cruz***, 166 A.3d 1249, 1254 (Pa.Super. 2017) (citation omitted), ***appeal denied***, 180 A.3d 1207 (Pa. 2018).

> To prevail on a suppression motion, a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized, and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest.

***Commonwealth v. Kane***, 210 A.3d 324, 330 (Pa.Super. 2019) (citation and bracket omitted), ***appeal denied***, 218 A.3d 856 (Pa. 2019), ***cert. denied***, ___U.S.___, 140 S.Ct. 2650 (2020).

_____

[5] Similarly, Article I, Section 8 of the Pennsylvania Constitution provides as follows:

> The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant.

Pa Const. art. I, § 8.

It is well-established that,

> [a]n expectation of privacy is present when the individual, by his conduct, exhibits an actual (subjective) expectation of privacy and that the subjective expectation is one that society is prepared to recognize as reasonable. The constitutional legitimacy of an expectation of privacy is not dependent on the subjective intent of the individual asserting the right but on whether the expectation is reasonable in light of all the surrounding circumstances.

*Commonwealth v. Burton*, 973 A.2d 428, 435 (Pa.Super. 2009) (*en banc*) (citations omitted).

Instantly, the trial court concluded that the LPR system used by the Bensalem Township Police Department to monitor Appellant's vehicle movement did not constitute a search under the Fourth Amendment, nor was it the functional equivalent of the GPS tracking device at issue in *Jones*.

Specifically, the trial court reasoned as follows:

> In this case, there is no expectation of privacy in a license plate, as they are often scanned throughout the normal course of traffic. Further, an LPR scans and gathers license plate information with no physical intrusion onto the drivers' property. Lastly, no caselaw in Pennsylvania equate an LPR with a GPS tracking device because this is an issue of first impression. While this Court finds the practice of reading and compiling license plate information troubling, it determined that the facts in this case are insufficient to establish the use of an LPR as the equivalent of physically placing a GPS device on a car. Therefore, because this Court did not find that the utilization of an LPR constitutes a search under the Fourth Amendment, this Court did not err in denying Appellant's motion to suppress.

Trial court opinion, 12/16/21 at 9 (footnote and extraneous capitalization omitted).[6]

Because the purpose of a license plate is to provide public information and is in plain view on a vehicle, Appellant does not have a reasonable expectation of privacy in his movements captured by the LPR system. Thus, we decline to find that Bensalem Township Police Department's use of an LPR system data to track and, ultimately, locate Appellant's vehicle constituted a "search" under the Fourth Amendment.

We find this Court's holding in **Commonwealth v. Dunkins**, 229 A.3d 622 (Pa.Super. 2020), **affirmed**, 263 A.3d 247 (Pa. 2021), **cert. denied**, ___U.S.___, 142 S.Ct. 1679 (2022), instructive. In **Dunkins**, a panel of this court held that Fourth Amendment protection against warrantless searches did not entitle defendant to suppression of cell site location information ("CSLI") used by law enforcement to determine defendant's location during robbery. **Id.** at 631. The **Dunkins** Court concluded that the defendant authorized his college to collect and share CSLI when he consented to college's internet use policy, which stated that they had right to share internet data transmitted over institutional assets. **Id.**

---

[6] We decline to adopt that portion of the suppression court's reasoning that "…the practice of reading and compiling license plate information [is] troubling." **See** trial court opinion, 12/16/21 at 9.

- 10 -

In affirming this decision on appeal, our Supreme Court in **Dunkins** reasoned that:

> To prevail on a suppression motion implicating the Fourth Amendment, **a defendant must demonstrate a legitimate expectation of privacy in the area searched or effects seized,** and such expectation cannot be established where a defendant has meaningfully abdicated his control, ownership or possessory interest.

**Dunkins**, 263 A.3d at 254 (internal quotation marks omitted; emphasis added).

Although not binding on this Court, the decision of the Federal District Court for the Western District of Pennsylvania in **United States v. Bowers**, 2021 WL 4775977 (W.D.Pa. 2021), is persuasive. The **Bowers** Court held that the defendant failed to meet his burden to show that he has a reasonable expectation of privacy in his location and physical movement as captured through LPR technology, because LPR data did not provide "near-perfect surveillance" of the vehicle, unlike CSLI, and was more akin to security camera footage. **Id.** at *3-4. Thus, the acquisition of this LPR data "was not a search within the meaning of the Fourth Amendment." **Id.**

Likewise, the recent decision of the Federal District Court for New Jersey in **United States v. Graham**, 2022 WL 4132488 (D.N.J. 2022), is instructive. The **Graham** Court held that law enforcement's use of an automated LPR database did not constitute a search within the meaning of the Fourth Amendment, and that "[d]efendant has failed to meet his burden to show that

he has a reasonable expectation of privacy in his location and physical movement as captured through ALPR." *Id.* at *5, citing *Bowers*.

Similarly, in the instant matter, Appellant cannot reasonably prevail on his claim that he was subjected to an illegal search under the Fourth Amendment. Appellant clearly did not maintain an expectation of privacy for the license plate number, which is attached in plain view to the exterior of his rental vehicle and which he voluntarily drove, nor did he possess an expectation of privacy in the location of his vehicle on a public thoroughfare.

In reaching this conclusion, we recognize that the United States Supreme Court has held that the Government conducts a "search" within the meaning of the Fourth Amendment when it "accesses historical cell phone records that provide a comprehensive chronicle of the user's past movements." *Carpenter v. U.S.*, ___U.S.___, 138 S.Ct. 2206, 2223 (2018). The *Carpenter* Court explained that because individuals "compulsively carry cell phones with them all the time," tracking the location of a cell phone provides "near perfect surveillance." *Id.* at 2218. The *Carpenter* Court reasoned that the all-encompassing and revealing nature of historical CSLI data collected over a period of time implicates privacy rights protected by the Fourth Amendment. *Id.* at 2219-2220. Thus, an "individual maintains a legitimate expectation of privacy in the record of his physical movement as captured through CSLI." *Id.* at 2217.

*Carpenter*, however, is distinguishable from the instant matter, as the data retrieved by the LPR system was clearly not as pervasive as CSLI data captured in that case. *See Bowers*, *supra*; *Graham*, *supra*. As the Federal District Court for New Jersey explained in *Graham*:

> In contrast to CSLI and GPS technology, however, courts have held that law enforcement's use of the [automated LPR] database does not infringe upon an individual's reasonable expectation of privacy because it does not reveal intimate details of an individual's daily life, nor does it track a person's every movement[.]

*Graham*, 2022 WL 4132488 at *5 (citations omitted).

Based on the foregoing, we find that the trial court properly denied Appellant's motion to suppress evidence derived from the warrantless search of the LPR database and find that the LPR database is not the equivalent of cell site location information data.

Appellant next argues that "the trial court erred in denying [his] motion to suppress because the search of [his] vehicle was not justified as a reasonable inventory search." Appellant's brief at 19. Appellant contends that "the search was not reasonable because it was for purposes of investigation and not for the protection of Appellant or the Bensalem Township Police Department." *Id.* at 22. We disagree.

As noted, the Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect individuals from

- 13 -

unreasonable searches and seizures.  U.S. Const. amend. IV; Pa Const. art.

I, § 8.

> Generally, law enforcement must obtain a warrant prior to conducting a search; however, there are certain exceptions to the warrant requirement.  One such exception, and the one at issue in the case **sub judice**, is an inventory search.
>
> The purpose of an inventory search is not to uncover criminal evidence, but to safeguard items taken into police custody in order to benefit both the police and the defendant.  In the seminal case of [**South Dakota v. Opperman**, 428 U.S. 364 (1976)], the [United Stated Supreme] Court observed that inventory searches of impounded vehicles serve several purposes, including (1) protection of the owner's property while it remains in police custody; (2) protection of the police against claims or disputes over lost or stolen property; (3) protection of the police from potential danger; and (4) assisting the police in determining whether the vehicle was stolen and then abandoned.
>
> An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the impounded vehicle.  In **Commonwealth v. Henley**, [909 A.2d 352 (Pa.Super. 2006) (**en banc**), **appeal denied**, 927 A.2d 623 (Pa. 2007)], the Pennsylvania Superior Court, citing **Opperman**, explained:
>
>> In determining whether a proper inventory search has occurred, the first inquiry is whether the police have lawfully impounded the automobile, i.e., have lawful custody of the automobile.  The authority of the police to impound vehicles derives from the police's reasonable community care-taking functions.  Such functions include removing disabled or damaged vehicles from the highway,

- 14 -

> impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety.
>
> The second inquiry is whether the police have conducted a reasonable inventory search. An inventory search is reasonable if it is conducted pursuant to reasonable standard police procedures and in good faith and not for the sole purpose of investigation.
>
> A protective vehicle search conducted in accordance with standard police department procedures assures that the intrusion [is] limited in scope to the extent necessary to carry out the caretaking function.

*Commonwealth v. Lagenella*, 83 A.3d 94, 102-103 (Pa. 2013) (internal quotation marks, footnote, and pinpoint citations omitted).

Here, the trial court opined that the Bensalem Township Police Department conducted a good faith inventory search of Appellant's vehicle that was reasonable pursuant to standard police procedures:

> In this case, Appellant was detained due to his failure to cooperate with the officers and their concern that he was a flight risk. As such, no one was present to operate his vehicle. Given that Appellant was stopped at an unsafe location; as cars trying to pass by would have had to move into oncoming traffic, the vehicle had to be impounded. Per Bensalem Police Department's policy, when a vehicle is impounded, officers must complete an inventory search at the scene beforehand. An inventory search requires officers to list all possessions and valuables found in the vehicle to ensure no item will be lost or damaged. The purpose of these inventory searches is not to obtain or collect evidence. Here, the inventory search was reasonable, as the car had to be impounded and policy requires officers to first note what items are inside. Therefore, this Court did not err in denying

- 15 -

Appellant's Motion to Suppress.

Trial court opinion, 12/16/21 at 10 (citations omitted).

Upon review, we find the record supports the trial court's findings and adopt these well-reasoned conclusions as our own.

For all the foregoing reasons, we affirm the trial court's September 27, 2021 judgment of sentence.

Judgment of sentence affirmed.

P.J. Panella joins.

Judge Olson files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/29/2023