J-S26036-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
:
JOSEPH D. BOGARDE :
:
Appellant : No. 2780 EDA 2022

Appeal from the Judgment of Sentence Entered June 29, 2022
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0003803-2021

BEFORE: STABILE, J., KUNSELMAN, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED NOVEMBER 3, 2023**

Joseph D. Bogarde appeals from the judgment of sentence imposed for violating the Motor Vehicle Code ("MVC") and the Controlled Substance, Drug, Device and Cosmetic Act. Bogarde argues the court erred in denying his motion to suppress the contraband the police found in his vehicle. We affirm.

Bogarde's motion to suppress argued that the police violated both the federal and state constitutions by prolonging a traffic stop, submitting the vehicle he was driving to a canine sniff, and searching its trunk. At a hearing, the Commonwealth presented testimony that Pennsylvania State Police Troopers Steven Gentile and Riley Ferris were monitoring traffic on I-95, when

> they observed a darkly tinted vehicle exiting from I-95 onto westbound Woodhaven Road that crossed over the white fog line for an extended period of time. The troopers began following the vehicle and made the following observations: The vehicle failed to maintain its lane of travel. The vehicle had a cover over its license plate. The license plate was not properly illuminated. And the tint on the windows of the vehicle was improper and illegal.

Pa.R.A.P. 1925(a) Opinion, 3/17/23, at 2 (numbering omitted and formatting altered).

The police pulled the vehicle over on Woodhaven Road. Trooper Ferris testified that Woodhaven Road is "definitely a high, frequently-used road. It's two lanes. I believe the speed limit is 55 miles per hour. It's a main, I would say, artery for people commuting around the Philadelphia area, the Northeast. It's used by a lot of people." N.T., 3/22/22, at 16. Trooper Gentile testified that the vehicle came to a delayed stop on the right shoulder. *Id.* at 59. Tropper Gentile testified that the car was "just on the outside of a slight right curve in the road" and not as visible to oncoming traffic as the shoulder at the beginning of the curve, where he typically has vehicles pull over. *Id.* at 105-06; *see also* 58-59 (Trooper Gentile stating he expected the vehicle to pull over sooner, in the safer location, where he commonly stops vehicles). He also stated the location where the vehicle pulled over was "less safe" because there was traffic on both sides of the shoulder due to an on ramp. *Id.* at 106.

Trooper Gentile approached the driver, who identified himself as Bogarde. He requested Bogarde's driver's license, registration, and insurance card. Trooper Gentile testified as to his reasons for doing so:

> The license is to identify who I'm dealing with and verify that they have a[n] active driver's license, where they're permitted legally to operate a vehicle. The registration is to make sure that the registration that's on the vehicle matching the VIN on the vehicle, that[]it's all legal. And insurance, which is required under Pennsylvania state law, to make sure that the vehicle is insured in the event the vehicle is involved in an accident.

*Id.* at 62.

Bogarde was unable to provide his license, registration, or insurance information. *Id.* Trooper Ferris testified that he ran the vehicle's tag in his system, which showed the vehicle was registered to Bogarde's mother. *Id.* at 38.

Trooper Gentile requested a canine search of the vehicle. The canine alerted on the trunk, which the officers searched. They recovered "a white Goodwill bag containing a tan zipper pouch containing four smaller bags of methamphetamine, three digital scales, and other items[.]" Pa.R.A.P. 1925(a) Op. at 4.

Trooper Gentile testified that if he hadn't held the vehicle for the canine search, he would have been required to tow it pursuant to police policy because Bogarde did not have a valid license, registration, or proof of insurance. N.T., 3/22/22, at 63-64, 68-69, 73, 80. He further testified that the vehicle would be subjected to an inventory search if towed:

> If we call for a tow, it's because the vehicle is either disabled or doesn't have registration, insurance or license, or a combination thereof, and at that point it's not an official search of the vehicle, but it's a search of the vehicle that's conducted for a collection of valuables or an inventory of valuables to document if there's a laptop, if there's iPads, large amounts of cash observed and easy access. It's not a detailed search of the vehicle.

*Id.* at 74; *see also id.* at 81-82.

Trooper Ferris similarly testified,

> Based off . . . of policy, if we're issuing him a citation, the vehicle cannot be driven, because it – there was not provided insurance or registration or driver's license. We would tow the vehicle for any one of those reasons, not all three together, and there would be an inventory conducted, yes, of the vehicle.

- 3 -

*Id.* at 33-34.

Defense counsel asked Trooper Gentile on cross-examination whether he could have left the car immobilized until its owner, Bogarde's mother, could have retrieved it. Trooper Gentile responded, "No. It's not common practice to prolong a traffic stop on the side of a highway. It's a safety hazard. Plus having additional people arrive on a scene on the side of a roadway is not safe." *Id.* at 94; *see also id.* at 96 (Trooper Gentile stating, "I have never had somebody respond to a traffic stop, strictly for an officer safety issue. . . . [I]ncreasing vehicles on the side of a roadway is highly unsafe"). He stated that the only exception to having the vehicle towed when the driver lacked operating privileges would be if the vehicle was stopped in a parking lot or safe location, or if there was another licensed driver in the vehicle and there was proof of insurance and registration at the time of the stop. *Id.* at 96.

The Commonwealth introduced the Pennsylvania State Police Policy ("PSP Policy") regarding vehicles that have been seized. It provides that when a vehicle is taken into custody, troopers must "remove any item of value from the vehicle [that was] inventoried and placed on a property receipt. The policy also requires the State Police to open and search any unlocked or unsealed containers located in a vehicle." Pa.R.A.P. 1925(a) Op. at 4 (paragraph numbers omitted and formatting altered). The PSP Policy explains the purpose of a "custodial/inventory search" is "to protect items of property carried in the vehicle from loss during storage." *Id.* at 11 (quoting PSP Policy). The policy further states that the search shall "[b]e reasonable and restricted to those

- 4 -

locations where items of value would normally be carried, including passenger areas, cargo areas, glove compartment, console, and trunk." *Id.* at 12.

At the conclusion of the hearing, the court found the canine sniff and subsequent vehicle search unlawful. *Id.* at 8, 11. However, the court found "the items seized from the trunk would have inevitably been discovered absent police error or misconduct" because "the police inventory policy require[d] the police to tow and inventory the vehicle." *Id.* at 4-5. The court also found the policy "is reasonable, as taking inventory of valuable items found in a seized vehicle protects the department, and the loss of an individual's property." *Id.* at 12. The court denied the motion to suppress.

Bogarde waived his right to a jury trial and proceeded to a bench trial. At the conclusion of argument, the court asked the prosecutor, "[D]id you present any evidence regarding [Bogarde's] operating privileges being suspended?" N.T., 4/13/22, at 68. The prosecutor responded, "Your Honor, there was testimony by Trooper Gentile that he did not have – there was no license, registration or insurance at that time." *Id.* at 68-69.

The court found Bogarde guilty of several violations of the Controlled Substance, Drug, Device and Cosmetic Act: possession of a controlled substance with intent to deliver, possession of a controlled substance, possession of a small amount of marijuana, and possession of drug

paraphernalia.[1] It also found him guilty of investigation by police officers, 75 Pa.C.S.A. § 6308(a), for his failure to exhibit his registration card, driver's license, or insurance. It also convicted him of obscured license plate, disregarding traffic lane, obstructed window, and no rear lights.[2] However, it acquitted him of driving while under suspension. *See* 75 Pa.C.S.A. § 1543(a). The court sentenced Bogarde to five to 10 years' imprisonment. Bogarde filed a post-sentence motion,[3] which the court denied.

Bogarde appealed.[4] He raises a single issue: "Did the trial court err in denying [Bogarde]'s motion to suppress where the otherwise illegal search was not justified by the inevitable discovery doctrine?" Bogarde's Br. at 7.

---

[1] *See* 35 Pa.C.S.A. §§ 780-113(a)(30), (a)(16), (a)(31)(i), and (a)(32), respectively.

[2] *See* 75 Pa.C.S.A. §§ 1332(b)(1), 3309(1), 4524(b), and 4303(b), respectively.

[3] The Commonwealth argues we lack jurisdiction because Bogarde did not file his motion within 10 days of his sentencing, such that his notice of appeal was untimely. We disagree. The court imposed Bogarde's sentence on June 29, 2022. Ten days later was Saturday, July 9, 2022. According to the docket entry, Bogarde filed his motion on the following Monday, July 11, 2022. It was therefore timely. *See* 1 Pa.C.S.A. § 1908 ("Whenever the last day of any such period shall fall on Saturday or Sunday . . . such day shall be omitted from the computation"). Although his motion was time-stamped as filed the next day (July 12, 2022), we accept the date shown in the docket entry and decline to quash.

[4] Bogarde's notice of appeal erroneously stated he appealed from the judgment of sentence entered on June 19, 2022. We have amended the caption to reflect that the judgment of sentence was entered on June 29, 2022.

- 6 -

"When reviewing the denial of a suppression motion, this Court reviews only the suppression hearing record, and not the evidence elicited at trial." ***Commonwealth v. Peak***, 230 A.3d 1220, 1224 (Pa.Super. 2020) (quoting ***Commonwealth v. Frein***, 206 A.3d 1049, 1064 (Pa. 2019)). "Where the record supports the suppression court's factual findings, we are bound by those findings and may reverse only if the court's legal conclusions are erroneous." ***Id.*** (quoting ***Frein***, 206 A.3d at 1064).

The inevitable discovery doctrine provides that illegally obtained evidence that ultimately or inevitably would have been discovered by lawful means is admissible. ***Commonwealth v. King***, 259 A.3d 511, 522 (Pa.Super. 2021).[5] The Commonwealth bears the burden of establishing by a preponderance of the evidence that illegally obtained evidence would have been discovered by legal means. ***Commonwealth v. Fulton***, 179 A.3d 475 (Pa. 2018). The Commonwealth may prove that evidence would have inevitably been discovered during the inventory search of a vehicle that was impounded because the driver lacked a valid license, registration, or insurance, and was parked in an unsafe spot. ***See, e.g., King***, 259 A.3d at 522-23; ***Commonwealth v. Chambers***, 920 A.2d 892, 897 (Pa.Super. 2007).

Bogarde first argues the Commonwealth failed to prove the vehicle would have been impounded and subjected to an inventory search simply

_____

[5] Because we affirm based on the inevitable discovery doctrine, we do not reach the question of whether the police illegally obtained the evidence.

- 7 -

because he did not provide the police with his license, registration, or proof of insurance. Bogarde asserts that the statute authorizing police to tow a vehicle for lack of operating privileges, 75 Pa.C.S.A. § 6309.2, only applies where a law enforcement officer has verified that information with PennDOT. Bogarde's Br. at 14-15.

Section 6309.2(a)(1) and (2) provide:

> (1) If a person operates a motor vehicle or combination on a highway or trafficway of this Commonwealth while the person's operating privilege is suspended, revoked, canceled, recalled or disqualified or where the person is unlicensed, **as verified by an appropriate law enforcement officer in cooperation with the department**, the law enforcement officer shall immobilize the vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storage agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

> (2) If a motor vehicle or combination for which there is no valid registration or for which the registration is suspended, **as verified by an appropriate law enforcement officer**, is operated on a highway or trafficway of this Commonwealth, the law enforcement officer shall immobilize the motor vehicle or combination or, in the interest of public safety, direct that the vehicle be towed and stored by the appropriate towing and storing agent pursuant to subsection (c), and the appropriate judicial authority shall be so notified.

75 Pa.C.S.A. § 6309.2(a)(1) & (2) (emphasis added).

Bogard asserts, "It is well-known that police officers in the Commonwealth have access to Pennsylvania Department of Transportation [("PennDOT")] records. This information is routinely accessed by either police

radio or by the computer terminal now contained within most police vehicles." Bogarde's Br. at 13. Bogarde alleges that here, the Commonwealth did not present evidence that the troopers confirmed with PennDOT that Bogarde did not have a valid drivers' license, and therefore did not comply with Section 6309.2(a)(1). Bogarde also highlights that although the Commonwealth charged him with failing to provide his license, registration, and insurance information, it did not charge him with driving an unregistered or uninsured vehicle. He further points out that the court found him not guilty of driving while under suspension.

Bogarde's first argument lacks merit because Section 6309.2 does not supplant other authority empowering the police in proper circumstances to impound vehicles: the community care-taking doctrine. *See Commonwealth v. Henley*, 909 A.2d 352, 364 (Pa.Super. 2006) (*en banc*) (rejecting argument that police only have authority to tow vehicles under Section 6309.2, because "the statute was not intended to trump the traditional community care-taking functions of the police").[6] "An inventory search of an automobile is permissible when (1) the police have lawfully impounded the vehicle; and (2) the police have acted in accordance with a reasonable, standard policy of routinely securing and inventorying the contents of the

---

[6] In **Henley**, the question was whether the police had authority to immobilize and tow vehicles separately from Section 6309.2, when the Commonwealth had not introduced evidence that the relevant municipality had adopted Section 6309.2. Here, Bogarde argues that the statute applies, and the Commonwealth does not argue that it does not apply.

impounded vehicle." **Commonwealth v. Lagenella**, 83 A.3d 94, 102 (Pa. 2013).

Police may lawfully impound vehicles as part of their "reasonable community care-taking functions. Such functions include removing disabled or damaged vehicles from the highway, impounding automobiles which violate parking ordinances (thereby jeopardizing public safety and efficient traffic flow), and protecting the community's safety." **Id.** at 103 (quoting **Henley**, 909 A.2d at 359).

The Commonwealth does not need to introduce a written copy of a police policy to prove police officers lawfully impounded a vehicle pursuant to their community care-taking functions. **See Commonwealth v. Gatlos**, 76 A.3d 44, 59 (Pa.Super. 2013). Where a vehicle jeopardizes public safety, such as by failing to have the requisite insurance, the police may impound it "pursuant to [their] traditional community care-taking function," regardless of whether Section 6309.2 applies. **See Henley**, 909 A.2d at 365.

Here, the court found the evidence established that even if the police had not searched the trunk and arrested Bogarde, they would have towed the vehicle because Bogarde had not produced proof of a valid license, registration, and insurance, and they could not have left the vehicle safely on the road:

> [Bogarde] was unable to provide documentation of a valid driver's license, registration for the vehicle, or an insurance card. Without the proper documentation, and the presence of the vehicle on a busy, well-traveled road, officers were required to engage in a reasonable community care-taking function. This function is to

- 10 -

> serve the community's safety, and thus, required the vehicle to be towed. An unlicensed driver is prohibited from operating a motor vehicle, and more significantly, any driver is prohibited from operating an uninsured or unregistered vehicle. Officers acted under proper authority, and lawfully impounded the vehicle.

Pa.R.A.P. 1925(a) Op. at 12 (emphasis omitted).

We agree that the police were lawfully entitled to impound Bogarde's dangerously placed vehicle once he was unable to produce a valid license, insurance, or registration. **Lagenella**, 83 A.3d at 102; **Henley**, 909 A.2d at 364. The troopers testified that it was their policy to tow vehicles in such a situation, in the interest of public safety. There was no evidence that the PSP Policy required the officers to first check the status of the driver's license, insurance, or registration status with PennDOT.

Bogarde also argues the Commonwealth failed to prove that an inventory search would have been lawful. He maintains the search the police conducted was not done in good faith, but for investigatory purposes. He argues that the troopers testified they suspected him of criminal activity and conducted a canine search for that reason, not that they intended to impound the vehicle due to the status of Bogarde's license. Bogarde claims this proves the search "was clearly conducted for purposes of investigation and not for the protection of [Bogarde] or the Pennsylvania State Police." Bogarde's Br. at 16.

This argument misapprehends the application of the inevitable discovery doctrine to the instant case. Certainly, an inventory search must be "conducted pursuant to reasonable standard police procedures and in good

- 11 -

faith and not for the sole purpose of investigation." **Lagenella**, 83 A.3d at 103 (quoting **Henley**, 909 A.2d at 359). However, the question is not whether the search the police conducted qualified as a proper investigatory search. Rather, the question is whether, hypothetically, had the police not conducted that search, they would have otherwise discovered the same evidence through a valid inventory search.

Here, the Commonwealth proved by a preponderance of the evidence that an inventory search would have been conducted and would have produced the same results. Trooper Gentile stated that a drivers' operating privilege, insurance, and registration are the first things he checks during a vehicle stop. He testified repeatedly that because Bogarde did not have these items, he would have had to tow the vehicle, even if the canine sniff had not occurred. The evidence therefore establishes that the police would have impounded and searched Bogarde's vehicle, regardless of their interim call for a canine sniff. This scenario purges the evidence of any illegality by which it was allegedly obtained. **King**, 259 A.3d at 522.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  11/03/2023